## Excelsior Clay Works v. DeCamp.

[No. 5,915.   Filed April 9, 1907.]

1. Pleading.—*Complaint. — Paragraphs. — Sufficiency.—Appeal.*— Where a demurrer was overruled to a complaint in two paragraphs, and one of such paragraphs is not questioned on appeal, the complaint will be held sufficient.   p. 27.

2. Same.—*Complaint.—How Drawn.—Recovery.*—The complaint should consist of a concise statement of the facts constituting the cause of action, and the recovery must be according to the allegations of the complaint.   p. 30.

3. Same.—*Answer. — Set-Off. — Counterclaim.* — Whether the defendant's pleading is an answer. set-off or counterclaim must be determined from the facts stated therein, but it cannot be all.   p. 30.

4. Same.—*Counterclaim.—Statutes.*—Under §§353, 354 Burns 1901, §§350, 351 R. S. 1881, a counterclaim is any claim, in favor of defendant, arising out of the subject-matter or transaction set forth by the plaintiff as his cause of action.   p. 30.

5. Words and Phrases. — *"Cause of Action." — Pleading.* — The phrase "cause of action," as used in §353 Burns 1901, §350 R. S. 1881, imports the matter for which an action may be brought.   p. 31.

6. Action.—*Causes for.—Counterclaim.*—While defendant cannot have a cause of action against plaintiff, arising out of his wrongs toward plaintiff, he may have a claim against plaintiff, arising out of the same transaction from which plaintiff's cause arises.   p. 31.

7. Pleading.—*Set-Off.—Counterclaim.—Torts.— Contracts.* — Independent torts cannot be made to compensate each other by any form of pleading; but a counterclaim arising out of the contract on which plaintiff's action is based is permissible.   p. 31.

8. Statutes.—*Words and Phrases.—"Transaction."—Counterclaim.* —The word "transaction," as used in §354 Burns 1901, §351 R. S. 1881, is not synonymous with "contract," as therein used, but imports something additional.   p. 32.

9. Words and Phrases.—*"Transaction."—"Contract."—"Accident." —"Occurrence."*—A "contract" is a "transaction," but a "transaction" is not always a "contract," nor is it synonymous with "accident" or "occurrence."   p. 32.

10. Pleading.—*Counterclaim.—Same "Transaction."—How Determined.*—In determining whether defendant's counterclaim arises out of the same "transaction" as plaintiff's cause of action, both the complaint and the counterclaim will be considered.   p. 33.

11. Words and Phrases.—*"Transaction."—Meaning.*—The word "transaction" imports the management or settlement of an affair; that which is done; the conducting of a business; a negotiation;

Excelsior Clay Works *v.* DeCamp—40 Ind. App. 26.

a proceeding; the performance of a matter of business; and it is not confined to a single day or place. p. 33.

12. PLEADING.—*Counterclaim.—Coal Mines.—Conversion.* — Where the adjacent owners of coal undertake to separate their coal in the mine and each to mine to the line, but each · invades the other's territory, and one files an action for conversion, the other may file a counterclaim and have their rights adjudicated in the same action. p. 34.

13. ASSUMPSIT.—*Waiver of Tort.—Conversion.*—Assumpsit lies to recover upon the implied promise to pay the value of coal wrongfully taken by defendant from plaintiff's land, the action in tort being waived. p. 36.

14. PLEADING.—*Complaint.—Conversion.—Elements.—Assumpsit.* — A complaint showing that defendant wrongfully, unlawfully, but by mistake and inadvertence, mined and appropriated plaintiffs' coal, states an action in conversion and not in assumpsit. p. 36.

15. ACTION.—*Contracts.—Torts.—Counterclaim.*—Where the facts warrant the plaintiffs in bringing an action in tort or in assumpsit, his election to bring it in tort does not deprive defendant of his right to file a counterclaim arising out of the same transaction. p. 36.

16. PLEADING.—*Counterclaim.—When Proper.*—The courts, in order to avoid a multiplicity of actions, adopt a liberal rule regarding counterclaims; and if the defendant has a claim connected with plaintiff's cause of action, he may assert it as a counterclaim. p. 37.

From Clay Circuit Court; *Presley O. Colliver,* Judge.

Action by Arthur De Camp and others against Excelsior Clay Works and another. From a judgment for plaintiffs, defendant Excelsior Clay Works appeals. *Reversed.*

*Frank A. Horner,* for appellant.

*A. W. Knight,* for appellees.

ROBY, P. J.—Action by appellees against the Excelsior Clay Works. The case was tried by a jury, and a verdict returned in favor of appellees, assessing their damage at $312.

The complaint is in two paragraphs. Frank Pechio was made a defendant to answer to any interest he might claim, and filed a disclaimer of interest. The appellant demurred to the complaint. Said demurrer was overruled, and such ruling is assigned as error. No objection to or criticism of the second paragraph of complaint is

made, and, under the established rule, objections to the first paragraph are not sufficient to sustain the assignment.

The substance of the first paragraph of complaint is: The appellant, a corporation engaged in the manufacture of clay products, operated and owned a coal mine on its premises in suit, and on July 26, 1899, Frank Pechio, came lawfully into possession, under a lease, of certain lands adjacent to those of the appellant. By the terms of his lease he was restricted to mining and removing coal from said land, and to other uses necessary to such mining operations. "Said real estate of said Excelsior Clay Works and its said coal mine were all located directly north of the lands covered by said Pechio's lease and adjoined the same on the south. Plaintiffs now say that on July 22, 1899, and on divers other times and days, the exact dates whereof are unknown to the plaintiffs, the defendant clay works did unlawfully and wrongfully, by inadvertence and mistake, break into and enter said lands and the coal veins therein, covered by the Pechio lease aforesaid, and did then and there unlawfully and wrongfully, by inadvertence and mistake, mine, remove and carry away therefrom and convert to its own use, large quantities of coal, to wit, 1,000 tons, of the value of $2,500."

It is further averred that the rights of said Frank Pechio were, prior to the institution of the action, assigned to appellees; that by reason of the foregoing facts appellees were damaged in the sum of $2,500.

Appellant answered in two paragraphs. The first is a general denial directed to both paragraphs of the complaint, while the second paragraph is addressed to the first paragraph of the complaint. The substance of such answer is that if appellant crossed the line and mined and appropriated to its use and benefit any coal whatever belonging to appellees or their assignor, the same was done, as appellees allege in their first paragraph of complaint, by inadvertence and mistake as to the lines dividing appellees' land and coal from that of appellant, and was not in any manner inten-

tionally. or knowingly done with any view or purpose of·
wronging or injuring appellees or their assignor; that appellant has at no time refused to pay for any such coal, if any
was so appropriated by it, at such time that the amount
thereof, if any, could be ascertained by survey or agreement.   And appellant says that before the beginning of this
action, and before the assignment by Pechio to appellees of
the alleged claim in suit, said Pechio became and ·was indebted, and still is indebted, to appellant in the sum of
$2,500, by virtue of the following facts:   That appellant
owns, and at the time of the occurrence of the matters herein
set out, owned and was in possession of, certain lands described; that said Pechio was, and had been until the assignment by him to appellees, in possession under a lease of
the coal underlying certain described lands adjoining those
of appellant; that under the terms of said lease Pechio is restricted to mining and removing coal; that a stratum of coal
extends uniformly under the surface of all of said land, and
the appellant and Pechio, during all the time since July 26,
1899, were engaged in the business of mining coal from said
stratum in their said adjoining lands; that the lines dividing the surface of said adjoining lands were not well defined, and in mining such coal it was difficult to ascertain beneath the surface the exact lines dividing that part of said
stratum, and the coal belonging to appellant from that part
of the same stratum which was leased by Pechio; that, owing to such difficulty in running the exact lines dividing
such real estate and said stratum of coal, said Pechio, on
July 26, 1899, and on divers other times and days, the exact
dates whereof are unknown to defendant, did, without license, but by inadvertence and mistake, and without any intention whatever to wrong or harm appellant, break into and
enter from the entries and workings underneath the surface
of said real estate said lands and coal veins of appellant, and
did then and there, without license or right, but by inadvertence and mistake, and without intention whatever to

wrong or harm appellant, mine, remove, and carry away therefrom, and appropriate to his own use and benefit, and receive and enjoy the profit of 1,000 tons of coal from the lands of appellant, of the value of $2,500; that by reason thereof said Pechio, before the beginning of the suit and before the assignment by him of his alleged claim to appellees. was indebted to appellant in said sum, which is past due and unpaid. Wherefore it was prayed that any amount found due appellees upon their first paragraph of complaint be set off against the amount due to appellant from said Pechio.

Appellees filed a motion to strike out the foregoing answer, which motion was by the court sustained, and exception reserved and such ruling assigned as error.

The statute requires that "the complaint shall contain * * * a statement of the facts constituting the cause of action, in plain and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended." §341 Burns 1901, §338 R. S. 1881. The plaintiff must recover according to the averments of his complaint. *Bixel* v. *Bixel* (1886), 107 Ind. 534.

Whether the pleading is an answer, set-off, or counterclaim is determined from the facts stated therein. *Jones* v. *Hathaway* (1881), 77 Ind. 14; *Mills* v. *Rosenbaum* (1885), 103 Ind. 152; *Crowder* v. *Reed* (1881), 80 Ind. 1. The pleading which has been heretofore referred to as an answer purports upon its face to be an answer, a set-off, and a cross-complaint. It cannot be all. §350 Burns 1901, §347 R. S. 1881; *Huber Mfg. Co.* v. *Busey* (1896), 16 Ind. App. 410; *Blakely* v. *Boruff* (1880), 71 Ind. 93.

"A counterclaim is any matter arising out of or connected with the cause of action which might be the subject of an action in favor of the defendant, or which would tend to reduce the plaintiff's claim or demand for damages." §353 Burns 1901, §350 R. S. 1881. This

section must be taken in connection with §354 Burns 1901, §351 R. S. 1881. *Woodruff* v. *Garner* (1886), 27 Ind. 4, 6, 89 Am. Dec. 477; *State* v. *Gerhardt* (1896), 145 Ind. 439, 33 L. R. A. 313. The language of the latter section is: "If any defendant personally served with notice omit to set up a counterclaim arising out of the contract, or transaction set forth in the complaint as the ground of the plaintiff's claims, or any of them, he cannot afterward maintain an action against the plaintiff therefor, except at his own cost."

The phrase "cause of action" means the matter for which an action may be brought (Bouvier's Law Dict.). "The 'cause of action,' then, is the 'wrong.'" Bliss, Code Pl. (3d ed.), §113. The language of §353, *supra,* taken literally and by itself, would not be of much practical importance. The Kansas statute contains the term "subject of action," where in our statute the term "cause of action" is used. The supreme court of Kansas, in discussing their statute, said: "The legislature did not commit the folly of enacting that several 'causes of action' may be united when they all arise out of the transactions connected with the same 'cause of action.'" *Scarborough* v. *Smith* (1877), 18 Kan. 399, 406; *Woodruff* v. *Garner, supra; Standley* v. *Northwestern, etc., Ins. Co.* (1884), 95 Ind. 254, 263.

A cause of action in favor of the defendant cannot arise out of the wrong which the defendant has done to the plaintiff. It may frequently arise out of the same transaction, and, when it does, it may be set up by way of counterclaim. It is entirely well settled that independent torts cannot be made to compensate each other by any form of pleading. *Lake Shore, etc., R. C.* v. *Van Auken* (1891), 1 Ind. App. 492; *Terre Haute, etc., R. Co.* v. *Pierce* (1884), 95 Ind. 496, 500. It is also true that when the cause of action set up by way of counterclaim arises out of the contract which is the foundation of

the plaintiff's action, the counterclaim may be entertained. Between these two extremes is the third class, in which the assertions of right on either hand "arise out of * * * the transaction set forth in the complaint." Whether the averments contained in the pleading, which has been heretofore referred to as an answer, but which is a counterclaim, if it is anything, show that the facts upon which it is founded arise out of the transaction set forth in the complaint, is the question, upon the answer to which the correctness of the action of the court in striking out said pleading depends. The meaning of the word "transaction" is therefore of controlling importance. Of it, Mr. Pomeroy, in his illuminating work on remedies and remedial rights, says: "As already stated in a former chapter, the difficulty in arriving at the true interpretation of the term 'transaction' lies in the fact that it had no strict legal meaning before it was used in the statute. Being placed in immediate connection with the word 'contract,' and separated therefrom by the disjunctive 'or,' one conclusion is certain at all events; namely, that the legislature intended by it something different from and additional to 'contract.' The most familiar rules of textual interpretation are violated by the assumption that no such signification was intended. The only question at all doubtful is, how far did the lawmakers design to go, and how broad a sense did they attach to the word? Is it to be used in its widest popular meaning, or must it be narrowed into some limited and technical meaning, and thus be made a term of legal nomenclature?" Pomeroy, Remedies and Remedial Rights (2d ed.), §769. A contract is a "transaction," but that a "transaction" is not necessarily a contract has been often held. *Pelton v. Powell* (1897), 96 Wis. 473, 71 N. W. 887; *Deagan v. Weeks* (1901), 73 N. Y. Supp. 641; *Cunningham v. Speagle* (1899), 106 Ky. 278, 50 S. W. 244; *Roberts v. Donovan* (1886), 70 Cal. 108, 11 Pac. 599. It is

also held by this court, and properly, we think, that the word is not synonymous with "accident" or "occurrence." *Lake Shore, etc., R. Co.* v. *Van Auken, supra.*

In determining whether the respective claims asserted by the parties arise out of the same transaction, the court is not confined to the facts stated by the plaintiff, but may take into account the facts set up by the defendant, and will from them all determine whether the claims arise out of the same transaction. *Woodruff* v. *Garner, supra; Judah* v. *Trustees, etc.* (1861), 16 Ind. 56, 61; *Story & Isham Com. Co.* v. *Story* (1893), 100 Cal. 30, 34 Pac. 675. The character of appellees' suit depends upon the facts thus disclosed, and not upon the technical phrases or epithets which may be used. The facts presented in the case at bar show that the respective claims arise out of an attempt by appellant and appellees' assignor to divide coal in the ground according to a surface line difficult to determine, and that through mutual and innocent mistake each party took an equal amount of coal from the other's land. If this attempted division in the manner stated was a transaction, within the meaning of the statute, then the counterclaim was a proper pleading, and should not have been stricken out. A transaction is "the management or settlement of an affair," Century Dict. "That which is done," Webster's Dict. "Transacting or conducting any business; negotiation; management; a proceeding," Worcester's Dict. "Transaction, as ordinarily employed, is understood to mean the doing or performing of some matter of business between two or more persons. It is from the Latin *trans* and *ago* (to carry on)." *Lake Shore, etc., R. Co.* v. *Van Auken, supra.* It is not confined to what is done in one day or at a single time or place. The logical relation of facts determines whether they together constitute a single transaction. *First Nat. Bank* v. *Wisdom* (1901), 111 Ky. 135, 63 S. W. 461. That adjacent landowners who should

undertake to determine their boundary line upon the surface of the earth would, while doing so, be engaged in a transaction, will scarcely be doubted. The appellant and appellee's assignor were none the less engaged in a transaction because the surface line, instead of monuments and corners, gave to them the data by which the boundary between them under the ground was to be fixed. Out of this transaction the claims of each party arise, and it is most eminently just that they should settle in one action, so far as practicable, all controversies arising between them therefrom. *Pelton* v. *Powell, supra.* In an early case the Supreme Court said: "But the deed sought to be set aside constitutes a part of the transaction upon which the plaintiff and the defendant both rely for a recovery. It is the link which forms a direct connection between the two diverse causes of action. So the counterclaim for the possession is 'connected with the cause of action' of the plaintiff directly, and is therefore authorized by the statute. In litigating either claim separately, an important question, to wit, the alleged fraud, must be investigated, inasmuch as it is necessarily a question in controversy. If that question be decided for the defendant, then, a single additional fact being established—that the plaintiff keeps him out of possession of land conveyed—entitles the defendant to a recovery. There is, then, one question common to both claims. Why should this be twice tried? We think that the object of the statute was to enable the parties, by a single litigation, to settle whatever claim either may have directly dependent upon such a question, and thus avoid a multiplicity of suits." *Woodruff* v. *Garner, supra.* The true line of location of the dividing line between coal belonging to the respective parties is the link corresponding to the fraud referred to in the above quotation.

In *Judah* v. *Trustees, etc., supra,* the action was against Judah for wrongfully converting certain bonds. The point was made that the action being in form *ex delicto,* the de-

fendant could not set off any claim which he may have had against the plaintiffs for services rendered or money expended for them. For this point the court said: "Without at all determining whether, under our statute, set-off or counterclaim can be pleaded to an ordinary action for the conversion of the property (2 R. S. [1852], pp. 39, 41) ; or whether this particular kind of property can be held for fees due to an attorney (*Id.* [2 R. S. 1852], p. 204) ; we are of the opinion that the pleadings developed such a necessity for an accounting between the parties as made it right to admit the defense as therein set up."

In *Shelly* v. *Vanarsdoll* (1864), 23 Ind. 543, it was said: "We are not aware of any case under our statute in which a counterclaim can arise in any action unconnected with contract." Many other expressions of similar import may be found in the reports. In *Terre Haute, etc., R. Co.* v. *Pierce, supra,* they were summarized as follows: "It is not quite true, as has been sometimes stated, that a counterclaim is only admissible in actions *ex contractu.* To the contrary, we think that the decisions of this court show that in some actions *ex delicto,* a counterclaim growing either out of a contract or tort may be pleaded. But an examination of these cases will show that the matters stated in the complaint and the counterclaims arose out of the same transaction, and that such transaction related to a contract of some kind between the parties." The facts under consideration neither call for nor authorize a discussion as to the necessity of a contractual element in order to maintain a counterclaim. If those facts excluded such element the proposition suggested by the learned writer of the very clear opinion in the case last cited would need to be taken up. Appellant insists with earnestness that the first paragraph of complaint is in form *ex contractu;* that by its averments appellees have elected to waive the claim of a wrongful conversion of the coal belonging to their assignor, and seek to recover in assumpsit on the promise to pay the reason-

able value thereof which the law implies in their favor. That they might do so and that such promise will be implied has been often decided. *Cooper* v. *Helsabeck* (1838), 5 Blackf. 14; *Rittenhause* v. *Knoop* (1894), 9 Ind. App. 126; *Moore* v. *Hays* (1895), 12 Ind. App. 476; *Pittsburgh, etc., R. Co.* v. *Swinney* (1884), 97 Ind. 586, 598. The form of the pleading does not indicate the purpose upon the part of appellees so to recover. They evidently intended to avail themselves of the decision in *Sunnyside Coal, etc., Co.* v. *Reitz* (1896), 14 Ind. App. 478, and have prepared their complaint following the lines of the one construed in that case. Nor is it necessary that they should adopt the milder form of action in order to bring the case within the principle suggested in *Terre Haute, etc., R. Co.* v. *Pierce, supra.* It is sufficient that they or their assignor might have brought assumpsit and recovered upon a promise to pay, which the law implies. That they seek a remedy upon different ground in nowise changes the fact that an element of contract does exist—an implied contract, it is true, but equally as effective as an express parol or written one, and one which, when sued upon, permits a counterclaim equally with the others. 25 Am. and Eng. Ency. Law (2d ed.), 585. And it is also held that whenever the facts are such that an election is given to the plaintiff to sue in form either for a tort or on contract, and if a counterclaim is permissible when he sues on contract, the same counterclaim may also be interposed when the suit is in form for the tort. 25 Am. and Eng. Ency. Law (2d ed.), 584. The application of the proposition last stated is not necessary to the present decision. It is sufficient that such element of implied contract exists in order that the case be taken out of that class where it is attempted to counterclaim an independent tort.

There are a great many classes of cases in which the coun-

terclaim is recognized because of the desire of the courts to conclude controversies in the most equitable and prompt manner. In *Standley* v. *Northwestern, etc., Ins. Co.* (1884), 95 Ind. 254, no reference is made to §354 Burns 1901, §351 R. S. 1881, and the following quotations made to show the liberality of the construction which has been given to §353 Burns 1901, §350 R. S. 1881: ''In defining a counterclaim the code provides that it 'is any matter arising out of or connected with the cause of action,' and if a strict construction were adopted the office of a counterclaim would be very much restricted, for the defendant would be confined to such matters as were connected with or grew out of the statement of the facts pleaded as constituting the grounds of the plaintiff's right to recover. A liberal construction has, however, been given to the code, and the counterclaim is good if it allege matters connected with the subject of the original action. Our cases do, indeed, go further, for they hold that a counterclaim may be maintained where it reaches the object of the action. * * * We do not say that this doctrine is expressed in direct terms, but it is the result of the decisions. It is a just result, and gives fair and beneficent effect to the spirit of the code, and is in accordance with the views of two of the leading authors on code pleading.'' In the following cited cases counterclaims have been entertained in order that controversies between the parties might be disposed of in a single action and full justice done to all concerned. To review them would require more space than the results would justify. *Tabor* v. *Mackkee* (1877), 58 Ind. 290; *Gossard* v. *Ferguson* (1876), 54 Ind. 519; *Grimes* v. *Duzan* (1869), 32 Ind. 361; *Morrison* v. *Kramer* (1877), 58 Ind. 38, 50; *Martindale* v. *Alexander* (1866), 26 Ind. 104, 89 Am. Dec. 458; *Milligan* v. *Poole* (1871), 35 Ind. 64; *Ferris* v. *Reed* (1882), 87 Ind. 123; *Emily* v. *Harding* (1876), 53 Ind. 102; *Gilpin* v. *Wilson* (1876), 53 Ind. 443.

The judgment is reversed, and the cause remanded, with instructions to overrule appellees' motion, and for further proceedings consistent herewith.