CURTIS, RECEIVER, *v.* CHICAGO AND ERIE RAILWAY COMPANY.

[No. 9,411.   Filed May 28, 1918.   Rehearing denied October 31, 1918.]

1. SET-OFF AND COUNTERCLAIM.—*Counterclaim.—Pleading in Action on Contract.*—In an action against a railway company for damages caused by the forcible removal from defendant's right of way of plaintiff railway company's tracks, which had been constructed on defendant's property pursuant to a contract, defendant could counterclaim for damages resulting from the failure of plaintiff to comply with the terms of the agreement.   p. 375.

2. RECEIVERS.—*Permission to Sue.—Counterclaim.*—Although it is the general rule that a receiver can neither sue nor be sued without leave of court, yet a defendant in an action brought by a receiver may file an appropriate counterclaim without first obtaining per-

mission to sue the receiver, in view of §352 *et seq.* Burns 1914, §347 R. S. 1881, relating to set-off and counterclaim. p. 376.

From Whitley Circuit Court; *Luke H. Wrigley,* Judge.

Action by James C. Curtis, receiver, against the Chicago and Erie Railway Company. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Lesh & Lesh* and *McNagney & McNagney,* for appellant.

*W. O. Johnson, D. V. Whiteleather, U. Z. Wiley* and *A. S. Lytton,* for appellee.

DAUSMAN, J.—Appellant instituted this action against appellee to recover damages. After both parties had introduced their evidence, the court on appellee's motion instructed the jury to return a verdict for appellee. Judgment that appellant take nothing by his action and against him for costs.

Briefly stated, the material facts averred in the first paragraph of complaint are as follows: That for many years appellee has owned and operated a railroad extending across the State of Indiana and through the counties of Huntington and Wells; that in 1907 the Cincinnati, Bluffton and Chicago Railway Company constructed its road from Huntington to Portland, Indiana, through the towns of Simpson, Markle and Uniondale; that in 1908 appellant was appointed receiver for the last-named company. The right of way of the C. B. & C. parallels and adjoins the right of way of the C. & E. from Huntington eastwardly for a distance of some fifteen miles; that its track for said distance was constructed on its own right of way, except that through the city of Huntington and the towns of Simpson, Markle and Union-

dale it was constructed on the right of way of the C. & E., pursuant to an oral agreement between the two companies; that the parts of appellant's railroad so constructed on the C. & E.'s right of way consisted of a roadbed of earth, ballast, ties and rails, was properly drained, and was a substantial railroad over which it operated its freight and passenger trains; that appellant operated its trains on said road until May 19, 1912, on which day the C. & E. by its agents and servants forcibly removed from its right of way the portions of appellant's track which had been laid thereon through the towns of Markle and Uniondale; that thereupon appellant obtained from the Huntington circuit court a restraining order, by the terms of which appellee was restrained from further interfering with appellee's property wherever situated; that appellee declared it would not abide by the restraining order, but would proceed to remove from its right of way the other portions of appellant's track, as it had done at Markle and Uniondale, unless appellant removed said portions of its own track; that, believing appellee would carry out its threat and would violate the restraining order, appellant did remove its own track from the C. & E. right of way in the city of Huntington; that on January 12, 1913, the C. & E. forcibly removed from its right of way the remaining portion of appellant's track at the town of Simpson, and that after removing said portions of appellant's track the C. & E. appropriated to its own use the grade constructed by appellee and laid a track of its own thereon; that in the removal of said portions of track a large number of ties, bolts and spikes were destroyed, carried away or lost; that some of the rails were hauled a considerable distance

from the place where taken up; that by reason of said removal the operation of trains was temporarily suspended, resulting in loss of freight, passenger and express business; that appellant was deprived of the grade, ballast and drainage which it had constructed or placed on appellee's right of way; that it was obliged to procure new right of way and construct new track thereon; that the cost of removing said track and the construction of new track was in excess of what the cost would have been' had the removal been accomplished pursuant to legal proceeding; that the right of way which appellant was obliged to acquire on which to construct its new track cost a sum greatly in excess of its true value and greatly in excess of what it would have cost if appellant could have had an opportunity to negotiate therefor with such deliberation as he would have had if said removal had been accomplished by legal procedure; that the removal of said track as aforesaid was a connected series of wrongful and aggressive acts forming a single trespass designated to cripple and injure and embarrass appellant in the continued operation of its railroad; that said actions and trespasses were unlawful and without process of law, and that by reason thereof appellant has been damaged in the sum of $50,000.

The second paragraph of complaint is substantially the same as the first, except that the averment concerning the agreement between the two companies is given greater prominence. With respect to this matter it is averred that certain tracks were constructed by the Cincinnati, Bluffton and Chicago Railway Company on the right of way of the Chicago and Erie Railway Company under a parol contract

between the two companies by the terms of which the Cincinnati, Bluffton and Chicago Railway Company acquired the right to occupy the other's ground permanently or for a term of years and in consideration therefor it gave to the C. & E. Co. an option to purchase certain of its property and facilities within a reasonable time at a stipulated figure. It is then averred that differences arose between the two companies concerning the terms and conditions of the tenancy, and that, pending negotiations for the adjustment of said differences, the defendant entered upon the premises and forcibly ejected the plaintiff, etc.

Appellee filed answer in nine paragraphs, and also a counterclaim. It appears that the oral agreement referred to in the complaint contained a provision to the effect that it should be reduced to writing, and accordingly this was done on June 22, 1910. The written agreement contains all the covenants between the parties, was duly executed by both companies, and was filed with and made a part of both the answer and the counterclaim.

The counterclaim is too voluminous to be set out in full. In addition to the many other allegations, it avers that the C. B. & C. Co. is indebted to the C. & E. Co. for doing certain work under articles 6 and 7 of the contract, for various sums due under article 20, for its proportion of operating expenses under articles 14 and 17, for moving the stations at Markle and Uniondale, for equipment and labor in replacing ties east of Huntington, for loan of equipment, for car service, for coal furnished for its engines, for supplies furnished from the C. & E. shop at Huntington, for maintaining and operating the

switch at Huntington, for judgment rendered by the Huntington Circuit Court, for rent, maintenance, operation, water, labor, material, repairs, rerailing engine, piloting and detouring trains, and for the cost of removing the tracks as provided by the contract—the total amount of which items is $15,688.70; that by reason of the failure of the C. B. & C. Co. to perform certain other conditions of the contract, and as indemnities against expenses and losses made and sustained by the C. & E. Co., the former is indebted to the latter in the further sum of $300,000; that all the matters alleged in the complaint and in this counterclaim arose out of the contract, and in order that the entire controversy may be settled promptly, and that full justice may be done to all concerned, it is essential that the respective claims of the parties be tried and adjudicated in a single action; that the C. B. & C. Co. is insolvent; that all its property has been sold by the receiver for $350,000; that the preferred claims, as determined and fixed by the court, amount to $375,000; that no part of appellee's claim is preferred; that appellee has no remedy against said company and its receiver unless its claim may be considered and adjudicated herein, and that unless its claim be so adjudicated, appellee will suffer irremediable injustice.

The only alleged errors presented for our consideration are the overruling of the demurrer to the counterclaim, and the directing of a verdict for the defendant.

The objections to the counterclaim, disclosed by the memorandum and properly presented by appellant's brief, are: (1) That the matters averred

1. in the counterclaim arise out of contract and cannot be pleaded to plaintiff's cause of action,

which is founded on tort; and (2) that it is not averred in the counterclaim that defendant had obtained permission of the proper court to prosecute its action against the receiver. The first objection is not well taken. *Excelsior Clay Works* v. *DeCamp* (1906), 40 Ind. App. 26, 80 N. E. 981. The second objection is untenable. True, the general rule is that a receiver can neither sue nor be sued without leave of court first obtained. *Wayne Pike Co.* v. *State, ex rel.* (1893), 134 Ind. 672, 34 N. E. 440. But, where an action has been commenced by a receiver, it would be a strange rule that would require the defendant in that action, who has been brought into court on the receiver's summons, to obtain leave of court to present any matter in his behalf which is germane to the controversy. It is the policy of the Code of Civil Procedure that the entire controversy between the parties shall be settled, if possible, in a single action. §352 *et seq.* Burns 1914, §347 R. S. 1881. Appellee might have been seriously disadvantaged by a failure to file his counterclaim. §356 Burns 1914; §351 R. S. 1881; *Reichert* v. *Krass* (1895), 13 Ind. App. 348, 40 N. E. 706, 41 N. E. 835.

Did the court err in directing the verdict? The following provisions of the written contract are essential to an understanding of this question:

"Article 20. * * * It is further agreed that in case either company shall fail to pay the other all sums when and as due under the terms of this agreement or to comply with or perform any of the covenants or obligations in this agreement by it to be kept and performed, and such default shall continue for a period of thirty days after written notice thereof to it, then and in

such case said other company shall have the right, at its option, to immediately terminate this agreement. * * *

"Article 22. Upon the termination of this agreement the Cincinnati Company agrees to remove the tracks, buildings and other facilities from the right of way of the Erie Company * * * and to restore such right of way to the same or as good condition as before said tracks were constructed; or, if it so desires, the Erie Company may do such work and bill against the Cincinnati Company for the cost."

Pursuant to said provisions, the contract was terminated. Thereafter the C. & E. Co. removed from its right of way the tracks of the C. B. & C. Co. in accordance with the terms of article 22. In removing said tracks and appropriating to its own use the roadbed and drainage the C. & E. Co. was acting strictly within its contractual rights. The evidence wholly fails to show that appellee did not use reasonable care in removing the tracks, or that any unnecessary injury was done to the material removed, and wholly fails to make a case of forcible entry. §8083 Burns 1914, §5237 R. S. 1881. The least that can be said is that by directing a verdict for appellee no injustice was done to appellant.

Judgment affirmed.

NOTE.—Reported in 119 N. E. 723.