Dan F. SHOTWELL and Cliff Hagan Ribeye of Clarksville, Inc. d/b/a Cliff Hagan Ribeye, Appellants (Plaintiffs Below),

v.

CLIFF HAGAN'S RIBEYE FRANCHISE, INC. and Cliff Hagan Ribeye, Inc., Appellees (Defendants Below).

No. 10A04–8905–CV–183.

Court of Appeals of Indiana, Fourth District.

April 30, 1990.

Rehearing Denied Aug. 3, 1990.

Anne Marie Sedwick, Sedwick & Sedwick, Jeffersonville, for appellants.

David W. Crumbo, Mary Ann Guenther, Christopher R. Fitzpatrick, Brown, Todd & Heyburn, New Albany, for appellees.

CONOVER, Judge.

Plaintiffs–Appellants Dan F. Shotwell and Cliff Hagan Ribeye of Clarksville, Inc. d/b/a Cliff Hagan Ribeye (Shotwell) appeal the Clark Superior Court II's order setting aside a $194,000 default judgment it had entered twenty-three months earlier against Defendants–Appellees Cliff Hagan's Ribeye Franchise, Inc. and Cliff Hagan Ribeye, Inc. (Hagan).

We reverse.

This appeal presents the following issues:

1. whether the trial court erred by granting Defendants' Motion for Relief from Judgment,

(a) because it was filed more than one year from the date the judgment was entered,

(b) by granting that motion on grounds specifically prohibited by Ind. Trial Rule 60(B)(8),

(c) determining that the judgment was void for lack of personal jurisdiction when Hagan was doing business in Indiana and had been properly and sufficiently served with process, and

2. whether Hagan presented a prima facie case establishing a meritorious defense to Shotwell's action.

In December of 1980, Shotwell purchased all the outstanding stock of Cliff Hagan Ribeye of Clarksville, Inc. from the two original incorporators. They had entered into a licensing agreement with Hagan in 1976. For some reason, the incorporators never formally assigned the Hagan licensing agreement to Shotwell, but Shotwell in fact paid $34,000 in franchise fees to Hagan after purchase of the stock.

In 1986, Shotwell filed a two count complaint against Hagan for declaratory judgment to void the franchise agreement, damages, attorney fees and costs under the Indiana Franchise Act. Process was served on the Indiana Secretary of State as resident agent for Hagan, even though Hagan was not registered to do business in Indiana. The day after service, the Indiana Secretary of State forwarded a summons and complaint to Hagan's respective agents for service of process as reflected in their annual reports to the Kentucky Secretary of State. These papers were returned to the Indiana Secretary of State marked "Return to Sender Forward Order Expired" and "Moved Not Forwardable" by the United States Post Office. The Indiana Secretary of State filed affidavits of service reflecting each notation.

Hagan did not file an answer to the complaint and a default judgment was entered on August 15, 1986, for $194,000 in damages together with $787.50 attorney fees, interest and costs of the action.

On July 13, 1988, Hagan filed a Motion for Relief from Judgment. That motion was heard in January 1989, at which time evidence was taken. At its close, the trial judge declared the default judgment void and set it aside, believing Ind.Trial Rule 60(B)(8) gave him the authority to do so.

Shotwell appeals.

Because issues 1(a) and (b) are related, we discuss them together.

Shotwell contends the court erroneously granted Hagan's Motion for Relief from Judgment on T.R. 60(B)(8)[1] grounds.

1. The portions of Ind.Trial Rule 60(B) relevant to this appeal are set out below:

(B) *Mistake–Excusable Neglect–Newly Discovered Evidence–Fraud, etc.* On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons:

(1) mistake, surprise, or excusable neglect;

(2) any ground for a motion to correct error, including without limitation newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59;

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) entry of default or judgment by default was entered against such party who was served only by publication and who was without actual knowledge of the action and judgment, order or proceedings;

. . . . .

(6) the judgment is void;

. . . . .

(8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4).

The motion shall be filed within a reasonable time for reasons (5), (6), (7), and (8), and not more than one year after the judgment, order or proceeding was entered or taken for reasons (1), (2), (3), and (4). A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills

Shotwell maintains Hagan's motion, although framed in T.R. 60(B)(8) language, is actually based on T.R. 60(B)(1) and thus, it is time barred. We agree.

■ While it is clear a trial court has broad discretion to set aside defaults under T.R. 60(B)(1)–(4), such discretion is limited to a one year period following the entry of default judgment. *Pounds v. Pharr* (1978), 176 Ind.App. 641, 376 N.E.2d 1193, 1196. T.R. 60(B)(8) gives broad equitable powers to the trial court and imposes a time limit based only upon reasonableness. *H & A, Inc. v. Gilmore* (1977), 172 Ind. App. 10, 359 N.E.2d 259, 260. However, some extraordinary circumstance must be affirmatively demonstrated to come within the purview of T.R. 60(B)(8). *Graham v. Schreifer* (1984), Ind.App., 467 N.E.2d 800, 803. The burden is on the movant to establish the existence of grounds for T.R. 60(B) relief and he must additionally establish a meritorious defense to the judgment. *Id.*, at 802. Where a motion to set aside a default judgment contains near classic allegations of mistake, surprise or excusable neglect, the one year limitation for relief from judgment cannot be avoided by framing the motion in T.R. 60(B)(8) terms. *H & A, Inc.*, *supra*, 359 N.E.2d at 261.

Here, the trial court entered the default judgment in August 1986. Shotwell filed a complaint on the judgment in Kentucky, in April, 1988. Hagan then filed its Motion for Relief from Judgment in July, 1988, nearly two years after the entry of default. The trial court determined Hagan's neglect in responding for two years stemmed from a lack of actual notice of the judgment. However, the record reflects the reason underlying Hagan's lack of actual notice was its own neglect and failure to update its annual reports with the Kentucky Secretary of State. Therefore, Hagan's T.R. 60(B)(8) request for relief due to any reason justifying relief from the operation of judgment, other than those reasons set forth in T.R. 60(B) sub-paragraphs (1)–(4), is in reality a request for relief based on

mistake, surprise, or excusable neglect, a T.R. 60(B)(1) request. Thus, the trial court was without discretion to grant the motion filed two years after the entry of default.

Shotwell contends the trial court erred if its determination to set aside the default judgment was based on Hagan's claim the judgment was void for lack of personal jurisdiction. The trial court did not address this issue in its judgment. Shotwell maintains Hagan's business in Indiana subjects it to *in personam* jurisdiction in Indiana courts. Further, Shotwell contends Hagan was sufficiently served with notice. We agree.

■ In Indiana, jurisdiction is presumed and need not be alleged under Ind. Trial Rule 8(A). *Alberts v. Mack Trucks, Inc.* (1989), Ind.App., 540 N.E.2d 1268, 1270, *reh. denied*. Ind.Trial Rule 4.4(A)(1) provides a nonresident organization submits to the jurisdiction of Indiana courts by *doing any business in this state*. To establish personal jurisdiction, the court must find, at a minimum, "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Omnisource Corp. v. Fortune Trading Co.* (1989), Ind. App., 537 N.E.2d 43, 44, quoting *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, *reh. denied*, (1958), 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92. A due process inquiry into personal jurisdiction questions involving foreign corporations requires the following:

(1) The defendant must be properly subject to the personal jurisdiction of the court, *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; (2) The defendant must receive adequate notice of the suit, *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865.

*Griese–Traylor Corporation v. Lemmons* (1981), Ind.App., 424 N.E.2d 173, 176. The first prong is satisfied by the defendant's

of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

"doing any business" in the state. T.R. 4.4(A)(1); IND. CODE 23–3–3–1;[2] *Griese–Traylor, supra,* at 180.

In *Griese–Traylor,* the court relied heavily on Judge Steckler's opinion in *Green v. Robertshaw–Fulton Controls Company* (1962) (S.D.Ind.) 204 F.Supp. 117, where he stated:

> ... Indiana has not adopted a narrow interpretation of the term 'doing business' as applied to the question of a foreign corporation's amenability to service of process in actions growing out of activities performed by corporate agents within the state.... The language 'engaging in any transaction or the doing of any business' in the Indiana statute (23–3–3–1) is as broad as constitutional authority will permit.

*Griese–Traylor, supra,* at 178–179. Relying on Judge Steckler's comments, the *Griese–Traylor* court stated:

> ... Furthermore, we have no reason to think that the phrase 'doing any business' as employed in T.R. 4(A)(1) should be any more narrowly construed in cases

involving foreign corporations than the phrase as employed in Ind.Code 23–3–3–1 has been construed.

*Griese–Traylor, supra,* at 180.

An understanding of the statutory language, (t)he engaging in any transaction or the doing of any business is critical to our discussion. This court has defined the term transaction, albeit in discussions pertaining to counterclaims, on at least two occasions. While these definitions are not directly on point, they are instrumental to our discussion.

In *Excelsior Clay Works v. DeCamp* (1907), 40 Ind.App. 26, 80 N.E. 981, 983, the court relied on several definitions to conclude:

> A transaction is 'the management or settlement of an affair,' Century Dict. 'That which is done,' Webster's Dict. 'Transacting or conducting any business; negotiation; management; a proceeding,' Worcester's Dict. ' "Transaction," as ordinarily employed, is understood to mean the doing or performing of some matter

**2.** *IND.CODE 23–3–3–1* was replaced by *IC 23–1–49–10,* effective August 1, 1987. In 1986, when the Plaintiffs' Complaint was filed and the Default Judgment entered, *IC 23–3–3–1* (1979) was in effect, and provided as follows:

> The engaging in any transaction or the doing of any business in this state by any foreign corporation not licensed nor admitted to do business in this state under any existing act or any act hereafter enacted shall be deemed equivalent to an appointment by such foreign corporation of the secretary of state, or his successor in office, to be the true and lawful attorney and agent of such foreign corporation upon whom may be served all lawful processes, writs, notices, or orders in any action or proceeding against such foreign corporation arising or growing out of, directly or indirectly, any act or thing done by such corporation within the state of Indiana. The engaging in any transaction or the doing of any bueinss [sic] in this state by any foreign corporation not licensed nor admitted to do business in this state under any existing act or any act hereafter enacted shall be significant of the agreement of such foreign corporation that any such process, writ, notice or order against it, which is so served, shall be of the same legal force and effect as if served upon a designated resident agent of such foreign corporation. Service of any such process, writ, notice, or order shall be made by leaving duplicate copies thereof, with a fee of five

dollars ($5.00), with the secretary of state, or in his office, and such service shall be sufficient service upon such foreign corporation: Provided, That notice of such service and a copy of the process, writ, notice or order are forthwith sent by registered mail, with return receipt requested, addressed to such foreign corporation at the principal office of such foreign corporation designated in the articles of incorporation of such foreign corporation as the same may appeal in the proper office in the state under whose laws such corporation is incorporated where articles of incorporation are required originally to be filed under the laws of such state. Upon the return of such return receipt showing delivery and acceptance of such registered mail, or upon the return of such registered mail showing a refusal of the acceptance thereof by such foreign corporation, the secretary of state shall attach either the return receipt or such refused mail to the copy of the process, writ, notice, or order retained by him and mail the same to the clerk of the court in which such action or proceeding is pending in respect of which such process, writ, notice or order was issued. The clerk of the court shall thereupon file the same as a paper in such action or proceeding and the same shall be deemed a part of the record in any such action or proceeding without a special bill of exceptions therefor.

of business between two or more persons.'

In *Middelkamp v. Hanewich* (1977), 173 Ind.App. 571, 364 N.E.2d 1024, 1035, J. Staton defined transaction in the context of a counterclaim:

'"Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon their connection as upon their logical relationship.' *Moore v. N.Y. Cotton Exchange* (1926), 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750, 757.

Further, Black's Law Dictionary, Revised Fourth Edition (1968), defines transaction as follows:

*Transaction.* Act of transacting or conducting any business; negotiation; management; proceeding; that which is done; an affair. Something which has taken place, whereby a cause of action has arisen. It must therefore consist of an act or agreement, or several acts or agreements having some connection with each other, in which more than one person is concerned, and by which the legal relations of such persons between themselves are altered.

Here, Hagan presented evidence at the evidentiary hearing of franchise payments made to Hagan. Further, Shotwell testified he was visited at times by a franchise agent. In light of the above definitions and the precedential interpretation of the phrase "doing business," Hagan was properly subjected to service of process on the Indiana Secretary of State. Hagan obviously "engag(ed) in any transaction or the doing of any business in this state," and enjoyed the benefits therefrom.

■ The requirement of notice is satisfied if the notice given is:

... reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.... The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected.

*General Finance Corp. v. Skinner* (1981), Ind.App., 426 N.E.2d 77, 81, *reh. denied,* (1982), 431 N.E.2d 526, citing *Mullane v. Central Hanover Bank & Trust Co., supra.*

IC 23–3–3–1 provided for service upon a foreign corporation via the Secretary of State as its agent. Here, service of process was made on the Indiana Secretary of State as resident agent for Hagan. Since Hagan was not registered to do business in Indiana, the Indiana Secretary of State forwarded the summons and complaint to Hagan's agents for service of process as reflected in its annual reports to the Kentucky Secretary of State. The summons to one of Hagan's agents was returned to the Indiana Secretary of State stamped "Return to Sender Forward Order Expired." The summons to the second Hagan agent was returned to the Indiana Secretary of State with the following notation, "Moved Not Forwardable." The Indiana Secretary of State filed affidavits of service reflecting these notations (R. 263–265). To hold IC 23–3–3–1 to require a foreign corporation actually receive or refuse a copy of the complaint to effectuate complete service would, in essence, allow a foreign corporation to shield itself from any legal action in this state by failing to register to do business here, by failing to designate a resident agent, or by failing to update the appropriate records in its home state. Having purposely availed itself of the privilege of doing business in Indiana, Hagan cannot now complain of the court's exercise of jurisdiction *in personam.*

■ Shotwell contends Hagan must, according to Ind.Trial Rule 60(D), establish a prima facie case it has a meritorious defense to the action. Shotwell maintains Hagan's failure to set forth admissible evidence of a meritorious defense at the evidentiary hearing precludes its claim for relief from judgment. We agree.

A meritorious defense is one showing if the case was retried on the merits a differ-

ent result would be reached. *Vanjani v. Federal Land Bank of Louisville* (1983), Ind.App., 451 N.E.2d 667, 672. Indiana requires a party seeking to set aside a default judgment to make a prima facie showing of a good and meritorious defense. *Id.*, at 671. However,

> [t]here need not be a showing of absolute entitlement to the relief sought in the instances of a defense or necessary party, for example, but enough evidence must be presented to reasonably satisfy the trial court to justify altering or setting the judgment aside upon hearing additional evidence ... If the result reached by the judgment would have been the same, the time and judicial resources of the trial court would be wasted in performing a useless ritual.... (Citations omitted).

*Bross v. Mobile Home Estates, Inc.* (1984), Ind.App., 466 N.E.2d 467, 469. The catalyst needed to obtain the proper relief is some admissible evidence which may be in the form of an affidavit, testimony of witnesses, or other evidence obtained through discovery. *Id.* Some admissible evidence must be presented to the trial court which would indicate the judgment would not remain unchanged and an injustice would be foisted upon the defaulted party if the judgment is allowed to stand. *Id.*

Parenthetically we note the recent case of *Peralta v. Heights Medical Center, Inc.* (1988), 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75, where the United States Supreme Court held a meritorious defense was not required to set aside a default judgment entered without notice or proper service. The court recognized lack of personal jurisdiction over the defendant because service was not in compliance with Texas law. The defect rendered the service and resulting judgment in violation of the due process clause.

Here, however, we are not faced with due process considerations since service was proper under IC 23–3–3–1. Hagan did not raise the constitutionality of the statute thus we need not address this issue. If a case can be decided without passing on constitutional questions, the Courts of Appeal will do so. *Richard v. State* (1985), Ind.App., 482 N.E.2d 282; *Indiana Bureau of Motor Vehicles v. Zimmerman* (1985), Ind., 476 N.E.2d 114.

Hagan presented no evidence at the evidentiary hearing other than the affidavits of Paul E. Sullivan, counsel and registered agent; Rudy S. Bicknell, secretary-treasurer and registered agent; and Cliff Hagan, President of Hagan. These affidavits were attached to Hagan's Motion for Relief from Judgment and asserted only, "[d]efendants have a meritorious defense to the Plaintiffs' action filed in Clark Superior Court No. 2." (R. 79–85). Hagan also attached a memorandum to its motion contending a variety of defenses yet they presented no evidence at the evidentiary hearing supporting their contentions. In fact, Hagan objected to presentation of any evidence at the evidentiary hearing. T.R. 60(D) not only permits the court to accept evidence, it requires it to do so. Ruby G. Bicknell and Cliff Hagan both attended the evidentiary hearing yet neither testified nor attempted to present evidence of a meritorious defense. When the trial court granted the Motion for Relief from Judgment without any admissible evidence presented to show a meritorious defense to the default judgment, it abused its discretion.

Reversed.

MILLER, J., concurs.

SULLIVAN, J., concurs in result with separate opinion.

SULLIVAN, Judge, concurring in result.

In light of the due process considerations as set forth in *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528, I concur in result. *See also Woodmar Coin Center, Inc. v. Owen* (1983) 4th Dist.Ind.App., 447 N.E.2d 618; 1 Harvey, *Indiana Practice* § 4.4.10 at 156–157.