**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Michael HANAHAN, Defendant-Appellant.**

**No. 18087.**

United States Court of Appeals,
Seventh Circuit.

May 18, 1971.

---

7. See *supra* note 3 and accompanying text.

Gerald M. Werksman, R. Eugene Pincham, Chicago, Ill., for appellant.

William J. Bauer, U. S. Atty., Michael D. Marrs, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel, for appellee.

Before MAJOR, Senior Circuit Judge, and FAIRCHILD and KERNER, Circuit Judges.

MAJOR, Senior Circuit Judge.

On April 15, 1968, at about 11 a. m., three men wearing Halloween masks robbed an Internal Revenue Service office in Chicago, Illinois. The robbers made their escape in a 1967 Chevrolet bearing Illinois 1968 license number EK–2770, which was abandoned about two blocks from the scene of the robbery and which was ascertained to have been previously stolen. About two hours after the robbery, Robert Hanahan (defendant) arrived at a garage located at 5416 West Madison Street, Chicago, driving a Cadillac. At that time and under circumstances subsequently related, he was arrested and charged with the robbery. After a trial to a jury, defendant was convicted of the robbery and sentenced to imprisonment for a term of 25 years. From this judgment he appeals.

Two issues are raised as grounds for reversal: (1) the trial court erred in denying defendant's motion to suppress all information and evidence, physical and otherwise, obtained by Chicago police officers as a result of an allegedly unconstitutional search of a garage in the rear of the premises at 5416 West Madison Street, and (2) the court committed reversible error by limiting defendant in his cross-examination of the government

witness, Rimanich, a co-defendant of the defendant in another case.

While each party on brief has summarized the testimony of all witnesses in considerable detail, particularly as it relates to the alleged unconstitutional search and seizure, we think that issue may be brought into proper focus by a comparatively brief statement of the facts.

 Thomas Lomeo was the owner of the premises located at the West Madison Street address. In the front he operated a pizza parlor, and upstairs was a 6-room apartment in which there were tenants during March and April, 1968. At the rear of the premises was a 2-car garage which faced an alley and which defendant leased some six months prior to the robbery. The garage on the alley side had a windowless overhanging door which extended across the width of the garage. The west side of the garage had a solid wall; the south side (facing the pizza parlor) had two windows one of which was not covered, and the east side had what is called a service door, located near the south end of the east wall. This door had an uncovered window and was recessed about 9″ from the wall. The yard between the garage and the pizza parlor was enclosed with a fence one end of which connected with the garage at or near the southeast corner. Near this corner was a gate in the fence. On the east side of the garage and about 2 feet from the wall was a 2-foot concrete walk parallel with the wall, which extended from near the pizza parlor through the gate and to the alley. Thus, the sidewalk along the side of the garage and the service door were outside the fenced area. There was a vacant lot on the east side of the garage and adjacent to the walk, which children used for a playground. In order to reach the pizza parlor and the apartment from the rear, it was necessary to use the walk, pass by the garage service door and through the gate. The walk was used by tenants, delivery men, employees of utility companies, customers of the pizza parlor, garbage men, and others. Lomeo stated that he had no objection to people using the sidewalk.

Defendant testified that when he rented the garage he purchased a padlock for the service door and gave a key to Lomeo. He also stated that other friends, naming two, had access to the garage and that he had loaned his key to friends a number of times. The garage had no heat or plumbing. Defendant's residence was about 3 blocks from the garage.

William Hanhardt, a Chicago police officer, testified that he had been told by a confidential informant that a garage located in the rear of a pizzeria in the 5400-block of West Madison Street was being used by Robert Hanahan and Frank DeLegge, Jr. The informant told him that guns, tools and other equipment suitable for committing burglaries and armed robberies were being stored in the garage.

Officer Hanhardt, acting on the tip he received from the informer, visited the premises during the nights of April 9, 10 and 14, 1968. On each occasion, while standing on the sidewalk, with the aid of a flashlight and without a search warrant, he looked through the service door window and observed a 1967 bluish-green Chevrolet which carried Illinois 1968 license EK–2770 on the rear.[1]

Hanhardt testified that on April 15, at about 11:30 a. m. (some 30 minutes after the robbery), he received information that the robbery had been committed by persons wearing face masks who had escaped in a 1967 Chevrolet bearing Illinois 1968 license EK–2770. He immediately relayed the information to

---

1. Hanhardt admitted that on one occasion previous to these dates he entered the enclosed portion of the back yard and looked through a rear window of the garage. All he was able to observe was a 1964 white Ford. The government expressly disclaimed any reliance on this evidence, and evidently it was not encompassed in the motion to suppress.

other police officers, requesting them to rendezvous at Laramie and Madison Streets. In the meantime, Hanhardt went to the Madison Street garage, looked in at the same service door window and observed that the Chevrolet was not there. He met the other officers at the rendezvous, briefed them as to the situation, ordered a surveillance of the garage and assigned detectives Jennings and Cirone to the task. Acting on the information and instructions thus received, Jennings and Cirone stationed themselves at a garage some 40 or 50 feet from the Madison Street garage. At about 2:15 p. m. (some 3 hours after the robbery), Jennings and Cirone observed a gold Cadillac [2] with a black vinyl top drive into the alley and park adjacent to the Madison Street garage. As the car stopped, a person identified as defendant got out on the driver's side, took off gloves he was wearing, walked to the trunk of the car, opened it and removed two bags, one a shopping bag and the other a gym-type bag. He placed the bags on the ground and removed from the car a Halloween mask and a man's hat, which he placed in one of the bags. Defendant picked up both bags and walked toward the service door entrance of the garage. The officers left their point of surveillance and approached defendant at or near the service door, which was open and had a padlock hanging on the hasp. Defendant was arrested, and the officers made a cursory search of the bags, in which they observed a mask, hat and guns. They also removed $655.00 from defendant's pocket.

Defendant on brief states, "It is defendant's contention that the information regarding the 1967 Chevrolet was obtained in violation of his constitutional rights under the Fourth Amendment. Further, this violation tainted his arrest and all evidence subsequently seized from him at the time of his arrest by the surveilling detectives, who were acting at Hanhardt's direction."

Thus, defendant presents the narrow issue as to whether information obtained by Hanhardt as to the Chevrolet by looking through the window in the service door constituted a search and seizure within the terms of the Fourth Amendment. If it did not, no issue is presented as to the arrest of defendant without a warrant and as to property obtained from him incidental thereto.

In support of his motion defendant relies upon Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, and United States v. Case, 435 F.2d 766, a recent decision of this court. In *Katz*, the court stated (389 U.S. page 353, 88 S.Ct. page 512):

"The Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth and thus constituted a 'search and seizure' within the meaning of the Fourth Amendment."

In United States v. White, 401 U.S. 745, page 752, 91 S.Ct. 1122, page 1126, 28 L.Ed.2d 453, decided April 5, 1971, the Supreme Court stated:

"Our problem, in terms of the principles announced in Katz, is what expectations of privacy are constitutionally 'justifiable'—what expectations the Fourth Amendment will protect in the absence of a warrant."

Subsequent to Katz, the Supreme Court in Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067, announced a principle pertinent to the instant situation:

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. [Citing cases.]"

2. It was later ascertained that the Cadillac had been stolen on March 22, 1968, and at that time there were no bags, guns or masks in the trunk.

In Case, the government agents obtained a key to a hallway where they overheard conversations of defendants in an adjacent room. After obtaining incriminating information in this manner, they entered the room occupied by the defendants and conducted a search. This court held the evidence thus obtained violated the defendants' constitutional rights, on the premise that the officers when they listened to conversations were in a place where they had no right to be and that the defendants had demonstrated their desire for privacy.

In the instant case, there is no basis for a finding that the defendant sought privacy as to an automobile which was in the garage. The facts indicate strongly to the contrary. True, he testified that he had a lock placed on the service door, but it was not exclusive. The landlord had a key and could enter the garage at will, several of defendant's acquaintances had access to the garage, and he referred to two friends who had unrestricted use. He also admitted that others probably had keys to the garage and that he often loaned his keys to friends. He did not reside at or near the garage. It had three windows, two of which were not covered or curtained. The window which was covered was in that condition when he rented the garage. The service door window through which Hanhardt looked while stationed in a place where he had a right to be and through which any other persons interested might have looked, had no cover over it. Clearly, defendant had no reasonable expectation of privacy.

 It is a well settled principle that visual detection by an officer stationed in a place where he has a right to be does not constitute a search within the meaning of the Fourth Amendment. In Ponce v. Craven, 409 F.2d 621 (CA–9), police officers, while standing in a motel parking lot, observed unlawful activity by looking into defendant's bathroom window. The parking lot was a place of public access. In response to a conten-

tion similar to that here, the court stated (page 625):

"Ponce's reliance on privacy in his motel room was not reasonable under the circumstances. If he did not wish to be observed, he could have drawn his blinds. The officers did not intrude upon any reasonable expectation of privacy in this case by observing with their eyes the activities visible through the window. [Citing many cases.]"

In Coates v. United States, 134 U.S. App.D.C. 97, 413 F.2d 371, the officers approached a car stopped in an alley. While they were standing outside of the car certain property within the car was visible to them. Defendant claimed that this property was seized in violation of the Fourth Amendment. In denying the contention, the court stated (page 373):

"Appellant can hardly assert a valid claim that seeing it violated his privacy. It is well established that visual detection of evidence does not constitute a 'search' within the meaning of the Fourth Amendment."

In United States v. Freeman, 426 F.2d 1351, page 1353 (CA–9), the court on facts quite similar to those here reversed the district court which had allowed the motion to suppress, and stated:

"Clearly, under the undisputed facts, the officer had a right to be in the position where he viewed the contraband in question. He arrived at such position for the legitimate purpose of verifying the information supplied by the informant. Access to the location was gained by means of unenclosed stairways obviously open for use by any person having a legitimate reason for doing so."

In Marshall v. United States, 422 F.2d 185, 188 (CA–5), after stating the doctrine known as the "plain view" rule, the court stated:

"Evidence concerning that which is in plain view is not the product of a search. [Citing cases.]"

To the same effect see Fagundes v. United States, 340 F.2d 673, 676 (CA–1).

We hold that the information obtained by Hanhardt of which defendant complains was not the result of an unlawful search. In fact, the information, insofar as was known at the time, in no way incriminated defendant. It was only after the robbers escaped in a car which bore the same Illinois license plate as Hanhardt had previously observed in the garage that it became important.

■ Defendant stresses the point that Hanhardt peered "through the windows of ·his. garage with flashlights in the dark of the night." The fact that Hanhardt was aided in this manner in obtaining information is of no consequence. See Dorsey v. United States, 125 U.S.App.D.C. 355, 372 F.2d 928, 931; Marshall v. United States, 422 F.2d 185, 188 (CA–5); United States v. Lee, 274 U.S. 559, 563, 47 S.Ct. 746, 71 L.Ed. 1202.

Defendant seeks to bolster his unlawful seizure contention with the argument that Hanhardt invaded the curtilage of the garage rented by defendant. We have held that Hanhardt at the times he looked through the service door window was standing on the sidewalk and that the evidence discloses no expectation of privacy on the part of defendant. While we think this disposes of the curtilage argument, we shall pursue it briefly.

■ Defendant seems to contend that his curtilage included a "few inches of grass between the sidewalk and the garage itself," and that Hanhardt stood on this strip of grass when he looked into the service door window. This premise is based upon what defendant professes to discern from photographs, contrary to the officer's testimony. Even if this dubious premise be accepted, it was no more than a technical trespass on the part of the officer. The court in Atwell v. United States, 414 F.2d 136, 138 (CA–5) stated:

"Moreover, even if the officers were trespassing on private property, a trespass does not of itself constitute an illegal search."

To the same effect see United States v. Polk, 433 F.2d 644, 648 (CA–5), and Monnette v. United States, 299 F.2d 847, 850 (CA–5).

A case even more in point is McDowell v. United States, 383 F.2d 599 (CA–8), where the officers on one occasion obtained information as to what took place while they were located on the curtilage of defendant's premises. As to that incident, the court stated (page 603):

"At that time the agents merely recorded the names of those persons coming out of the north field and visually observed their clothing. This did not constitute a search, Fagundes v. United States, 340 F.2d 673, 676 (1st Cir. 1965) and no seizures for the purposes of obtaining evidence took place within the curtilage."

The fallacy of defendant's curtilage theory is that the mere obtaining of information did not constitute a search or seizure. We hold that the court properly denied defendant's motion to suppress.

■ Finally, defendant contends that the trial court committed reversible error by denying his counsel the right to cross-examine government witness Rimanich regarding (a) his successful defense of temporary insanity at a prior trial and (b) his claim of insanity in another case in which he and defendant were jointly charged with bank robbery and which was pending before Judge Austin. Counsel also sought to cross-examine Rimanich concerning his acquittal in 1962 of the charge of assaulting a United States marshal in open court by reason of temporary insanity.

Trial counsel informed the court that he expected to show that a psychiatrist's report submitted to Judge Austin on August 6, 1969, found Rimanich competent but stated, "However, the staff feels that Mr. Rimanich will try in every way possible to give the impression that

he should be adjudicated incompetent and irresponsible."

Defendant's counsel did not contend that Rimanich was incompetent, but conceded that he was sane and always had been. It appears to be counsel's position that he was entitled to cross-examine Rimanich on his alleged feigned insanity in other cases as bearing upon his credibility.

It is not discernible on what basis the acquittals of Rimanich in cases tried in 1962, some 8 years prior to the instant case, could properly be shown on cross-examination or otherwise, especially in view of counsel's concession that he was sane and competent at the time of the instant trial. We think there was no error in denying the right to cross-examine him as to an alleged feigned insanity in another case in which he was a defendant but had not been tried. The psychiatrist's report upon which counsel relied was hearsay and would have been inadmissible in connection with the witness's cross-examination or otherwise. The contents of that report, if material, could have been shown only by the testimony of its author.

We are satisfied that there was no reversible error committed by the trial court in its denial of the right to cross-examine Rimanich relative to the alleged feigned insanity issue. Contrary to defendant's contention, while the government's proof was largely circumstantial, it was strong and convincing. The record discloses that the cross-examination of Rimanich was extensive, and we are advised that it covered 51 pages of the transcript.

It must be kept in mind that the cross-examination of a witness, particularly on collateral matters, rests largely within the discretion of the trial judge and that the court's action will not be interfered with unless there is a showing of a plain abuse of discretion. United States v. Bender, 218 F.2d 869, 874 (CA–7); Basic Books, Inc. v. Federal Trade Commission, 276 F.2d 718, 721 (CA–7); United States v. Micele, 327 F.2d 222, 226 (CA–7), and United States v. Teller, 412 F.2d 374, 380 (CA–7).

We hold that under the circumstances presented there was no abuse of the court's discretion in the limitation which it imposed on defendant's cross-examination of Rimanich.

The judgment appealed from is

Affirmed.