UNITED STATES of America,
Plaintiff-Appellee,

v.

Louis C. MORROW, Defendant-Appellant.

No. 76–1249.

United States Court of Appeals,
Seventh Circuit.

Argued June 16, 1976.

Decided Aug. 11, 1976.

Rehearing and Rehearing En Banc
Denied Sept. 23, 1976.

George Clyde Gray, Indianapolis, Ind., for defendant-appellant.

James B. Young, U. S. Atty., Bradley L. Williams, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before SWYGERT, CUMMINGS and PELL, Circuit Judges.

PER CURIAM.

In November 1975, defendant was indicted for receiving and concealing a stolen motor vehicle in interstate commerce in violation of 18 U.S.C. § 2312. After a jury trial, he was sentenced to five years' imprisonment. His appeal questions the denial of a motion to suppress evidence, the refusal to give a certain instruction about his prior felony convictions, and the denial of a mistrial because of the Assistant United States Attorney's improper opening statement. We affirm.

*Propriety of Search and Seizure of Defendant's Automobile*

The testimony developed at the hearing on the motion to suppress showed that on October 21, 1975, defendant was residing with Mrs. Sarah Wells at 3945 Aspen Way in Indianapolis. On that date Special Agent John Ziegler of the Federal Bureau of Investigation learned that defendant was driving a maroon Cadillac with a Kentucky license plate and that the car might be stolen. Ziegler knew defendant from previous investigations and that he frequented the Aspen Way residence. On the way there, Ziegler encountered defendant driving the car in question. Defendant asked if Ziegler wanted to see him. Upon receiving an affirmative response, defendant drove to the Aspen Way residence followed by Ziegler, who told defendant that the car was suspected of being stolen. Upon request, defendant agreed to permit Ziegler to record the license number and the Vehicle Identification Number of the car. Defendant incorrectly read the Vehicle Identification Number to Ziegler, who recorded the correct number and the number of the license plate. When Ziegler asked defendant why he was driving a car with a Kentucky license plate, defendant said the car was purchased in Kentucky by his wife. Ziegler refused defendant's offer to show him the registration but did ask defendant for a later appointment.

Ziegler returned to his car and radioed for an inquiry by the National Crime Information Center about the vehicle in question. While Ziegler was awaiting the results, defendant drove off in the Cadillac. Ziegler attempted to follow him but lost sight of the Cadillac after defendant took a circuitous route. At about 3:00 p. m. Ziegler

learned from the National Crime Information Center that the car and license plate had been stolen. Ziegler and another agent then drove to several locations frequented by defendant but did not find the Cadillac.

About 6:00 p. m., Ziegler returned to the Aspen Way residence to learn the whereabouts of the Cadillac. After parking his car, he walked up the driveway to the entrance of a walkway leading to the front door. Through a front window, he saw two unidentified males seated at a table, but no one responded to his repeated knocks at the front door.

When Ziegler retraced his steps down the walkway, he noticed that the two males were no longer visible. As he reached the junction of the walkway and driveway, he looked slightly to his left toward the garage, approximately 25–30 feet away. Through large glass windows running the width of the garage door, he observed a large white convertible car top inside and recognized the car immediately. Then he proceeded down the driveway and looked in the windows of the garage and observed the same Cadillac Eldorado that defendant had been driving earlier, with the same Kentucky license plate.

As Ziegler was returning to his car, he radioed for a tow truck and for another agent to assist him. At the time he was concerned about his personal safety. Through conversations with Sarah Wells, who invited him inside the residence, Ziegler learned that defendant was not home, the garage door was not locked, and she did not have keys to the car. Nevertheless, Ziegler was concerned that it could be driven away. When he raised the garage door, he noticed that there were no keys in the car. Thereafter, another agent and the tow truck arrived, and the car was towed to the FBI's Indianapolis garage where it was impounded and locked up.

On October 22, the Cadillac was searched at the FBI garage. The following items seized from the car were admitted into evidence at defendant's trial:

A piece of paper with a name, address and telephone number

The car's license plate

An admission ticket to a baseball game stamped with the name "Louis" (defendant's first name) on the back

A Kendall Refining Company inspection sticker

A Marathon Oil Company service record.

Several colored photographs of the automobile were also removed and admitted into evidence.

The Government argues that the seizure of the automobile and above items therefrom did not violate the Fourth Amendment since the car was in plain view when Ziegler first saw it in the garage about 6:00 p. m. on October 21st. While it is true that Ziegler's uncontradicted testimony shows that he immediately "recognized" the Cadillac when he looked toward the garage after leaving the Aspen Way residence, the plain view doctrine is not enough to justify the present warrantless seizure of evidence. The four plain view exceptions to the warrant requirement presume that a valid search is underway before the contraband is discovered. See *Coolidge v. New Hampshire*, 403 U.S. 443, 465–466, 91 S.Ct. 2022, 29 L.Ed.2d 564. Nevertheless, the seizure was valid, for *Coolidge* recognizes that exigent circumstances justify the warrantless search of an automobile when it is stolen and there are apparent confederates who may be waiting to remove the evidence. 403 U.S. at 462, 91 S.Ct. 2022.

That the car was plainly visible to Ziegler justified his approaching the garage for a closer look. Whether this aspect of the investigation was reasonable depends in great part on the defendant's interest in privacy in the garage. *United States v. Martinez-Fuerte*, —— U.S. ——, ——, 96 S.Ct. 3074, 49 L.Ed.2d 1116; *United States v. Conner*, 478 F.2d 1320, 1323 (7th Cir. 1973).

As in *United States v. Conner*, supra, 478 F.2d at 1323–1324, Ziegler was on the premises because of the tip about illegal activities concerning the Cadillac. He immediately "recognized" the Cadillac from seeing its white convertible top when 25 to 30 feet from the garage while leaving

the premises. As we said in *Conner* (at p. 1323):

> "Under these circumstances, the defendants had no reasonable expectation of privacy. Even if the officers were on the [garage] apron, which was not fenced off from the alley, we think that a mere 'technical trespass' did not transform an otherwise reasonable investigation into an unreasonable search. See *United States v. Hanahan*, 442 F.2d 649, 653–654 (7th Cir. 1971)."

> Paraphrasing *Conner*, once Ziegler observed the Eldorado Cadillac in the garage, with the knowledge furnished from the National Crime Information Center, he had reasonable cause to believe that very vehicle was stolen (478 F.2d at 1323–1324) and probable cause to conduct a search. See *United States v. Santana*, —— U.S. ——, ——, 96 S.Ct. 2406, 49 L.Ed.2d 300.

Ziegler knew that there were then at least two male occupants in the home who could have driven off in the Cadillac or assaulted him. It is immaterial that the keys were not in the car because anyone in possession of a set of keys could have operated it. Likewise defendant himself could have soon again removed the car from the premises. Ziegler had a duty to preserve and protect the property of the true owner. While a warrant was being procured, the car could have been driven away. In view of the time of day, Ziegler reasonably feared for his safety, also necessitating immediate action. Under these circumstances, as in *Conner*, Ziegler was justified in entering the garage and causing the Cadillac to be seized. 478 F.2d at 1324.

While defendant relies on *United States v. Gardner*, 467 F.2d 205 (7th Cir. 1972), that case involved dismantled auto bodies which could not have been driven off, and there the police officers threatened to use tear gas to gain admittance to the building. Thus, as stated in *Conner*, "The circumstances here are also entirely different from the coercive situation found" in *Gardner* (478 F.2d at 1324). While in *Gardner* the police could have procured a warrant without endangering themselves, in this case Ziegler could not. Finally, although defendant also assails the search of the impounded Cadillac at FBI headquarters on the following day, this argument was authoritatively foreclosed by *South Dakota v. Opperman*, —— U.S. ——, 96 S.Ct. 3092, 49 L.Ed.2d 1000.

■ Whether there exist sufficient exigent circumstances to justify seizure of evidence without a warrant must be determined on a case-by-case basis. Nevertheless, we believe that the circumstances here demonstrate only the minimum necessary reasonableness and therefore, even though we have upheld the reasonableness of the Aspen Way search, in the future FBI agents should attempt to secure search warrants whenever possible, thus obviating the necessity of litigating salient Fourth Amendment claims.

*Adequacy of Instruction No. 11*

■ Defendant testified at his trial that he had three felony convictions within the preceding ten years. Subsequently, the following Instruction No. 11 was given by the trial court:

> "The testimony of a witness may be discredited or impeached by showing that he has been convicted of a felony. Prior conviction does not render a witness incompetent to testify, but merely reflects on his credibility. It is the province of the jury to determine what weight, if any, should be given to such prior conviction as impeachment."

Counsel for defendant objected to giving of this instruction because it did not state "more specifically that * * * they [the jurors] should only consider the prior conviction as to his credibility as a witness." The jurors were told that it was their province to determine any weight to be given to such prior conviction "as impeachment." While the instruction could have been even more specific as to impeachment, it did caution that the testimony of a witness "may be discredited or impeached by showing that he has been convicted of a felony"

and that a prior conviction "merely reflects on his [the witness'] credibility." In substance, this instruction carried the meaning that the jury should only consider the prior conviction as to the witness' credibility and therefore is not erroneous. See *United States v. Hamilton*, 420 F.2d 1096, 1098 (7th Cir. 1970); *United States v. Bartone*, 400 F.2d 459, 461 (6th Cir. 1968), certiorari denied, 393 U.S. 1027, 89 S.Ct. 631, 21 L.Ed.2d 571.

*Government's Opening Statement*

■ In her opening statement, the prosecutrix mentioned that "the defendant had testified [at the suppression hearing] that he in fact altered the name on the [Cadillac] registration and obliterated the number." This may have been contrary to the rule of *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, which prohibits the introduction of evidence given at a suppression hearing. When defense counsel objected to this comment in the opening statement, Government counsel stated, "It was a misstatement" and only harmless error, if any. The district judge promptly admonished the jury that opening statements are not evidence. Defendant argues nonetheless that the admonition was not sufficient to cure the harm. The prosecutrix' statement, according to the defendant, had the effect of requiring the defendant to forego his right to remain silent because he was forced to explain why the registration was altered. We disagree. The registration's alteration was apparent to the jury and it was found in the defendant's possession, so that the jury could reasonably infer that the defendant had altered it. The prejudice was minimal. Therefore, in view of the curative instruction and the substantial evidence against the defendant, no mistrial was necessary. *Brandom v. United States*, 431 F.2d 1391, 1396 (7th Cir. 1970), certiorari denied, 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 634; *United States v. Robinson*, 406 F.2d 64, 66–67 (7th Cir. 1969), certiorari denied, 395 U.S. 926, 89 S.Ct. 1783, 23 L.Ed.2d 243.

Judgment affirmed.

SWYGERT, Circuit Judge (dissenting).

I would reverse for all three reasons advanced by the defendant-appellant. The facts largely speak for themselves.

I

The majority admits that the search and seizure of the car cannot be defended on the plain view doctrine as contended by the Government. Yet the majority upholds the seizure on the ground that "exigent" circumstances existed. The circumstances cited by the majority are specious in my opinion.

At the time of its seizure, the car was in a closed private garage adjacent to a house occupied by Sarah Wells with whom the defendant was living. After Agent Ziegler had observed the car through the garage windows, he radioed for a tow truck and another agent to assist him. The defendant was not present, but Ms. Wells was in the house. When the agent informed her that he was going to seize the car, she refused to open the garage doors after being told that the agent had no warrant authorizing the seizure. She said that she did not have the keys to the car; there were no keys in it. After a time another agent arrived followed by the tow truck. The truck pulled the car out of the garage and hauled it away.

Agent Ziegler further stated that the only person who entered the garage with him was a young man who had identified himself as the defendant's son. He said he had no fear that this man was going to drive the vehicle away. Ziegler further admitted that he did not have any fear that anyone else was going to drive the vehicle away while he was there, especially after the other agent arrived.

It was an established fact that a magistrate was available for the issuance of a warrant had one been applied for. Clearly, Ziegler had ample opportunity to obtain a search warrant prior to the seizure of the car. As the trial judge pointed out, "[I]f he could radio for help and radio for a tow truck, why couldn't he radio for one of his

brother agents to get a warrant while he sat out there and watched them?"

In denying the motion to suppress, the trial judge gave no reasons for his action (despite previous admonitions by this court that trial judges should find the facts specifically and state the grounds for disposing of motions to suppress). Thus, we are left to speculate as to the judge's reasons for denying the motion; however, from the above quoted remarks, it is plain that he did not consider the circumstances exigent.

Here, as in *United States v. Young*, 489 F.2d 914, 916 (6th Cir. 1974), the agents "[H]ad no grounds to believe that the vehicle might be moved within the few minutes required to make application for a search warrant from a concededly available magistrate."

Exigent circumstances mean circumstances demanding immediate action. The rubric should not be used as a catchall to justify a warrantless seizure of evidence by federal agents, unjustified by any other exceptions, and when the circumstances are not truly exigent.

## II

The challenged instruction did not relate to a criminal defendant's felony conviction. It related only to convictions of a *witness* with reference to his credibility. The instruction should have stated in substance that the defendant's convictions could be considered by the jury insofar as they might affect his credibility as a witness, but under no circumstances as evidence of the guilt of the crime for which he was being tried. The failure to give such an instruction had the potential of creating extreme prejudice.

## III

The majority concedes that the prosecutor's comments in her opening statement about the defendant's testimony at the suppression hearing was "contrary" to the rule in *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Yet, says the majority, the prejudice was minimal; therefore "in view of the curative

instruction and the substantial evidence against the defendant, no mistrial was necessary." I take a different view. The prosecutor's impermissible reference to the defendant's suppression hearing testimony could hardly have been anything less than deliberate. The defendant's constitutional right to remain silent was impaired. The prosecutor's remarks had the effect of forcing the defendant to the witness stand to explain his pretrial testimony. How such a grievous constitutional violation could be harmless escapes me. The only cure was a mistrial.