B. P. O. E. # 576, ELKS CLUB a/k/a Board of Trustees of B. P. O. E., Noblesville Chapter, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 2–978–A–314.

Court of Appeals of Indiana, Second District.

Dec. 17, 1980.

David M. Adams, Castor, Richards, Adams & Boje, Noblesville, for appellant.

Theodore L. Sendak, Atty. Gen. of Indiana, Alembert W. Brayton, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

The Benevolent and Protective Order of Elks, No. 576 (Elks) was convicted, after a bench trial, of possession of slot machines as per I.C. 35–25–4–1(a) and was fined $500.

The Elks Club appeals that conviction and presents two issues for our review:

1) Whether the court erred in permitting photographs, taken subsequent to a defective search warrant, to be introduced into evidence, and

2) Whether the evidence is sufficient to establish that the apparatuses were operable, could have money inserted therein or that a potential user could obtain anything of value.

We affirm.

At approximately 3:00 a.m. on November 21, 1976, burglar alarm # 5 was activated at the Noblesville Police Department. That particular alarm was for the Elks Club and could be deactivated only by a key. Police officers Lynn Austin and Ralph Givens were dispatched to the Club to check for prowlers. Austin went to the east end of the building while Givens covered the west end. Givens testified that he saw lights in a downstairs room and also observed through a window several metal objects with lever–type arms. Givens noticed an open door on the west side of the building and summoned Officer Austin by walkie–talkie. The two then entered the building

through the open door and proceeded to search the entire building.

## I.

Subsequent to the initial search of the Elks Club by Officers Austin and Givens, a search warrant was issued and certain objects were seized and photographed. That search warrant was later deemed defective and a motion to suppress the evidence seized was granted. Accordingly, at trial the court excluded the evidence seized pursuant to the search warrant as well as Exhibits 7 and 11 which were photographs taken after the issuance of that search warrant.

The Elks Club now argues that certain other photographs, namely Exhibits 2, 4, 5, 6, and 14, and eyewitness testimony about the objects photographed were erroneously admitted because such evidence relates to the subject matter of the warrant and was tainted by the defectiveness of that warrant. It is well settled that evidence obtained as a result of an illegal arrest, search or seizure is tainted and inadmissible unless the government can show that the evidence was obtained from an independent source. *Pirtle v. State* (1975) 263 Ind. 16, 323 N.E.2d 634.

In the case at bar, Officers Austin and Givens testified that they were dispatched to the scene to investigate a possible burglary. A light emanating from the basement prompted the officers to look into the windows and enter the building. Inside they noticed the metal objects in dispute here. Under the so-called "plain view" doctrine, evidence obtained by a warrantless entry is admissible if the officer 1) is rightfully positioned and 2) discovers the evidence in plain view inadvertently. *Ludlow v. State* (1974) 262 Ind. 266, 271, 314 N.E.2d 750, 753; *Alcorn v. State* (1970) 255 Ind. 491, 265 N.E.2d 413. In searching for an intruder, the officers were acting reasonably and within the scope of their duties. Officer Austin testified that they entered the building "to search for possibly a burglar, which is what we do when we find any door or window broken in any type of build-

ing." Both officers recounted their room-by-room search of the premises to check for anyone hiding. They observed the metal objects sitting on the tables in various rooms. We believe these circumstances fall squarely within the plain view doctrine. The officers were rightfully on the premises; the Elks Club was within the jurisdiction of the Noblesville Police Department and a part of the Department's routine patrol. The officers went to the Elks Club to check the building security since the alarm activated. They had no prior knowledge of the presence of the machines and discovered them inadvertently while carrying out their normal investigatory routine. Accordingly, no search warrant was necessary and the trial court did not err in admitting the officers' eyewitness testimony.

The Elks Club also disputes the introduction into evidence of the photographs. Officer Givens testified that the photographs of the metal objects, denominated Exhibits 2, 4, and 5, were taken in his presence between 3:30 and 4:00 a.m., before the search warrant was obtained. Officer Givens also testified that Exhibit 14, a photograph, was taken during the same period of time. The Elks Club argues that the photographs must be excluded as a product of a defective warrant because the film negative strip was introduced which indicated that Exhibits 2, 4, 5 and 14 were photographed *after* Exhibit 11. Exhibit 11 was excluded on the grounds that it was taken in the daylight hours after the issuance of the defective warrant.

A trial court is vested with broad discretion in determining admissibility of evidence and its determination will be reversed on appeal only where a ruling is contrary to the logic and effect of the facts and circumstances before the court. *Misenheimer v. State* (1978) 268 Ind. 274, 374 N.E.2d 523; *State v. Moore* (3d Dist. 1979) Ind.App., 391 N.E.2d 665. In the instant case, the trial court's determination to admit the photographs was based upon a consideration of contradictory evidence. The negative strip indicated that the photos in question were taken subsequent to Exhibit

11 and yet Officer Givens testified that those photos were taken in his presence prior to the issuance of the defective warrant. When faced with contradictory versions of the facts, it is the role of the trial court, not the appellate tribunal, to weigh the evidence, judge the credibility of the sources, and make a ruling. While we might have ruled otherwise under the circumstances of this case, we cannot say that the trial court abused its discretion by admitting the photographs.

### II.

■ The Elks Club next argues that the evidence was insufficient to establish that the metal objects observed and photographed by the officers were slot machines. A slot machine is defined by I.C. 35–25–4–2 as follows:

"'Slot machine' defined.–Any machine, apparatus or device is a slot machine or device within the provisions of this act [35–25–4–1—35–25–4–3] if it is one that is adapted, or may readily be converted into one that is adapted, for use in such a way that, as a result of the insertion of any piece of money or coin or other object such machine or device is caused to operate or may be operated, and by reason of any element of chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, credit, allowance or thing of value, or any check, slug, token or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance or thing of value, or which may be given in trade, or the user may secure additional chances or rights to use such machine, apparatus or device, even though it may, in addition to any element of chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise, indication of weight, entertain-

ment or other thing of value." (Burns Code Ed. 1975) [1]

Specifically, the Elks Club contends that the State failed to show that money could be inserted into the device, that it operated, and that an operator was entitled to anything of value by chance.[2]

■ Officer Givens described the devices in the following manner:

"They were blue. I would say, ah I'm guessing, about three foot high. They had wood paneling type stuff on the front and they had windows and an arm, a metal arm. As to the exact number setting on the shelves, I'm not sure."

In addition, when asked if he observed any money in those devices, he responded affirmatively and explained:

"Ah some nickels, some were dimes, some were quarters. I believe one was even fifty cents."

Officer Austin also described one of the devices. He explained that:

"It was approximately ah two feet in height. Ah a foot and a half probably wide, and it had a lever on the, I believe, the right side which pointed upward. It was, it had a wooden base and it was burgandy in color, I believe, or deep red. It was metal, blue on the bottom, silver across the top, and it had like a glass window at the top of it also."

The testimony of the officers must be viewed in conjunction with the photographic evidence. Exhibits 2, 4, and 5 portrayed the machines as well as a card table and chairs. Exhibit 6 was a photograph of a machine taken at a closer range and showed the windows with fruit symbols and a slot with the number 25 opposite it. A photograph of a green table top with the words "Dealer must draw to 16 and stand on all 17's" and "Insurance–Pays–2 to 1" was introduced. Finally, Exhibit 9 consisted of a photograph of a piece of paper labeled

---

1. I.C. 35–25–4–2 was repealed by Acts 1976, P.L. 148, § 24, effective October 1, 1977. For savings clause concerning crimes committed prior to that date, see Acts 1977, P.L. 340, § 150. For new law, see I.C. 35–45–5–4 (Burns Code Ed. 1979).

2. It may be noted that a "slot machine" need not be actually operational. The evidence is sufficient if it discloses a machine which "may readily be converted . . . ."

"Blackjack" upon which several rules had been printed out by hand. Among the rules listed were:

"Blackjack pays *double* and five cards under 21 pays *double*.

. . . . .

50¢–$5 maximum

minimum

No Pay on Dealer mistakes."

It is well established that a conviction may be based upon circumstantial evidence so long as the circumstances permit a reasonable inference of guilt. *See generally Jones v. State* (1978) 268 Ind. 640, 377 N.E.2d 1349; *Walston v. State* (1st Dist. 1979) Ind.App., 386 N.E.2d 1015.

There is a dearth of Indiana authority as to the proof necessary to establish a device as a "slot machine". *Worl v. State* (1962) 243 Ind. 116, 183 N.E.2d 594, dealt with the sufficiency of an information to state a public offense. There the court found the following to be sufficient:

" 'Julian Benner swears he is informed and believes that Dean Worl on or about the 4th day of April, 1960, at and in the County of Wayne, State of Indiana, did then and there unlawfully and wrongfully keep, store and possess a gambling device and slot machine, being contrary to the form of the Statute in such cases made and provided and against the peace and dignity of the State of Indiana.' " 183 N.E.2d at 595.

*Ferguson v. State* (1912) 178 Ind. 568, 99 N.E. 806, is closer to the point. The issue there was whether the device "was a gaming one." Evidence which described how the device was played and the result of such playing was found sufficient to sustain a conviction for keeping a gambling device.

■■■ A Maryland case is more helpful. In *Scott v. State* (1967) 1 Md.App. 481, 231 A.2d 728, *Md. cert. denied*, Oct. 9, 1967, the court was faced with whether evidence presented at trial sustained a finding that the devices were "slot machines" within the meaning of a statute nearly identical to that here involved. The court found:

"Section 264B particularly defines a slot machine as 'one that is adapted for use in such a way that, as a result of the insertion or deposit therein, or placing with another person of any piece of money, coin, token or other object, such machine, apparatus or device is caused to operate or *may be operated*, and by reason of any element of chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, coin, token or other object representative of and convertible into money, irrespective of whether the said machine, apparatus or device may, apart from any element of chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise or money or other tangible thing of value.' [Italics supplied]

The devices were admitted in evidence and observed by the jury. A Maryland jury reasonably could be expected to make the decision whether they fell within the statute from this observation alone. However, numerous witnesses described them as slot machines.

The fact that there was no showing that they were operational is beside the point in the light of the italicized language in the statute and in the light of the fact that the owner said he 'could tell they are not in too bad shape.' The inference is plain that they were operational or could be made to operate." 231 A.2d at 737.

The trier of fact is not required to put aside the common experiences and knowledge acquired during a lifetime. To the contrary, Indiana Pattern Criminal Jury Instruction 13.05 specifically advises each juror that he "should use your own knowledge, experience and common sense gained from day to day living". A trial court without jury is no more limited in this sense than a jury of laymen. With this proposition in mind we view the evidence which was before the court.

The other items located in immediate proximity to the devices in question were obviously used for gambling purposes and the pervasive environment in that immedi-

ate area was one of gambling. These circumstances, coupled with the photographic reproduction of the machines showing the fruit symbols common to slot machines and which contained money permitted a reasonable inference that the machines were operational or were readily convertible into machines adapted for gambling, and that by their use and the element of chance a user could obtain something of value. Thus despite the fact that the State could have readily established its case by firmer proof, it was not here unreasonable for the court to find guilt.

The judgment is affirmed.

BUCHANAN, C. J., and ROBERTSON, J. (participating by designation), concur.