[Nos. 5237–1–III; 5294–0–III.   Division Three.   January 26, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. MARK
L. DRUMHILLER, ET AL, *Appellants.*

*J. Adams Moore, Jr., Dobbs, Moore & Kirkevold, Russell J. Mazzola,* and *Smith, Scott & Mazzola,* for appellants (appointed counsel for appeal).

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Robert N. Hackett, Jr., Deputy,* for respondent.

GREEN, J.—Following a bench trial, Thomas Stewart and Mark Drumhiller were convicted of possessing a controlled substance—cocaine. They appeal, contending the evidence against them was obtained as a result of an unlawful search and seizure. We affirm.

The evidence and the court's finding to which no error has been assigned reflect the following facts. On April 17, 1982, at about 12:45 a.m., the Yakima Sheriff's Department received a telephone call from a citizen who believed that a neighbor's residence was being burglarized. He reported that he saw an unfamiliar car parked in the driveway and two men looking through the windows of the residence. Officers Dixon, Williams and Graham were dispatched to the area.

The officers parked their patrol cars down the street and walked to the front of the residence. They observed a vehicle was in the driveway; the drapes to a front picture window were open from 4 to 6 feet; and the interior lights were on. Inside they saw two men seated at the dining room table; however, they could not discern exactly what they were doing.

While Officer Williams proceeded to the back of the resi-

dence, Officers Dixon and Graham approached the front window and stood in a shrubbery bed directly in front of it. They saw Stewart bent over a flat object on the table separating a powdery substance with a razor blade. Drumhiller then held a straw up to his nose and began inhaling the substance. Officer Graham recognized their activity was typical of cocaine use.

When Officer Williams returned from the back of the residence, Officer Graham advised him of his observations from the window. Officer Dixon remained at the window while the other officers, accompanied by a police dog, rang the doorbell. Drumhiller opened the door. The officers informed him they were investigating a burglary and asked for identification. Drumhiller stated he and Stewart were in the home by permission of Kim Nordberg, his girl friend. The nameplate on the door stated "Jessup". Defendants were placed in custody in the living room and were given *Miranda*[1] warnings.

Officer Dixon, who had remained by the window, testified she observed that when Drumhiller went to the door, Stewart leaned down to the floor, put a piece of paper over the flat object, carefully carried it to a desk by the dining room table and placed it out of view. When defendants were secured, she entered the residence, went to the dining room, and looked through a drawer in the desk. She then looked on top of the desk and found a mirrored tray containing a small amount of white powder and a drinking straw under some paper.

Thereafter, a fourth officer, Sergeant Ward, arrived at the scene and the kitchen counter top and dining room were searched. A razor blade, cigarette holder and Zig–Zag papers were found on the floor under a throw rug.

Kim Nordberg then arrived. She informed the officers she lived in the residence with her mother and stepfather but they were gone for the weekend. She confirmed that

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

defendants had her permission to be in the home and, although she left, she had planned to meet them there later.

The admissibility of the items secured by the officers from the residence form the basis of the assignments of error on appeal.

First, defendants contend the items should have been suppressed because the officers' observations while looking through the front window of the residence constituted an unreasonable search. They argue they evidenced a privacy expectation by partially drawing the drapes to that window. They further assert the officers had no right to make their observations from the shrubbery area since it was not a normal walkway. We disagree.

The evidence is undisputed that defendants had positioned themselves in front of a picture window with the lights on and the drapes open from 4 to 6 feet. They were visible to any passerby. A legitimate expectation of privacy means more than the subjective expectation of not being discovered. *Rakas v. Illinois,* 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978); *State v. Wolohan,* 23 Wn. App. 813, 817, 598 P.2d 421 (1979). As Mr. Justice Harlan observed in *Katz v. United States,* 389 U.S. 347, 361, 19 L. Ed. 2d 576, 88 S. Ct. 507, 516 (1967) (Harlan, J., concurring):

> [A] man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the "plain view" of outsiders are not "protected" because no intention to keep them to himself has been exhibited.

In light of the facts presented, we do not find defendants' claimed privacy expectation reasonable or justifiable. *United States v. Bifield,* 498 F. Supp. 497, 508–09 (D. Conn. 1980); *People v. Willard,* 238 Cal. App. 2d 292, 47 Cal. Rptr. 734 (1965); *State v. Smith,* 37 N.J. 481, 181 A.2d 761, 769 (1962), *cert. denied,* 374 U.S. 835, 10 L. Ed. 2d 1055, 83 S. Ct. 1879 (1963); *Commonwealth v. Hernley,* 216

Pa. Super. 177, 263 A.2d 904 (1970).[2]

▮ Nor do we consider the officers' actions here to be unreasonable. In *State v. Seagull*, 95 Wn.2d 898, 902–03, 632 P.2d 44 (1981), the court stated:

> The presence of an officer within the curtilage of a residence does not automatically amount to an unconstitutional invasion of privacy. Rather, it must be determined under the facts of each case just how private the particular observation point actually was. It is clear that police with legitimate business may enter areas of the curtilage which are impliedly open, such as access routes to the house. In so doing they are free to keep their eyes open. An officer is permitted the same license to intrude as a reasonably respectful citizen. However, a substantial and unreasonable departure from such an area, or a particularly intrusive method of viewing, will exceed the scope of the implied invitation and intrude upon a constitutionally protected expectation of privacy.
>
> What is reasonable . . . must be based on the facts and circumstances of each case.

(Footnote and citations omitted.)

Here, the officers were legitimately on the premises investigating a reported potential burglary when they observed the illegal activity. Positioning themselves by the window, only a few steps from the walkway to the front door was necessary both for their protection and to carry out their obligation to investigate. Under the circumstances, such a minimal departure from the usual access route to the front door was not unreasonable. *See United States v. Langley*, 466 F.2d 27 (6th Cir. 1972); *State v. Gott*, 456 S.W.2d 38, 41 (Mo. 1970); *Bies v. State*, 76 Wis. 2d 457, 251 N.W.2d 461 (1977).

▮ Second, defendants contend the officers violated the knock and wait statute, RCW 10.31.040, when they entered the home. We need not address whether each of the ele-

---

[2]For these reasons, we find *Lorenzana v. Superior Court*, 9 Cal. 3d 626, 511 P.2d 33, 108 Cal. Rptr. 585 (1973), cited by defendants, to be inapplicable. In that case, the occupants of the residence had closed their blinds and the officers looked through a small opening in the drapes.

ments required under that statute[3] were met because there were exigent circumstances justifying the officers' entry. Officer Graham, trained in narcotics investigation, testified he observed Stewart "cutting a line" and Drumhiller "snorting" the substance through a straw—behavior typical of cocaine use. He and Officer Dixon could reasonably believe the evidence of that crime was in the process of disappearing. Their observations warranted prompt action and the action taken was not unreasonable. *See State v. Young*, 76 Wn.2d 212, 455 P.2d 595 (1969); *State v. Mueller*, 15 Wn. App. 667, 552 P.2d 1089 (1976); *State v. Campbell*, 15 Wn. App. 98, 101–02, 547 P.2d 295 (1976); *see also State v. Counts*, 99 Wn.2d 54, 659 P.2d 1087 (1983).

Finally, defendants contend the officers were not warranted in seizing the cocaine. They argue once they were placed in custody, any exigent circumstances dissolved and no other exceptions to the warrant requirement existed which would permit the officers to seize the evidence. We disagree.

█ Officer Dixon observed Stewart put paper over the flat object with the cocaine on it and move it to a desk immediately behind the dining room table. This act was in her open view. When she entered the house, she went directly to the desk and retrieved the cocaine from the top of the desk. It was on a mirror under a piece of paper—just as it had been when she saw it being transported to the desk. We do not perceive this to be a general exploratory search condemned by the Fourth Amendment—rather, it was the recovery of evidence of a crime committed in the officer's presence and in open view. Under these circumstances, the officers were justified in seizing the evidence. *See State v. Mueller, supra* at 671; *People v. Superior*

---

[3]The statute has been interpreted to require that before entering a residence police "announce their identity, demand admittance, announce the purpose of their demand, and be explicitly or implicitly denied admittance." *State v. Coyle*, 95 Wn.2d 1, 6, 621 P.2d 1256 (1980); *see also State v. Talley*, 14 Wn. App. 484, 543 P.2d 348 (1975); *State v. Lowrie*, 12 Wn. App. 155, 528 P.2d 1010 (1974); *State v. Dugger*, 12 Wn. App. 74, 528 P.2d 274 (1974).

*Court,* 53 Cal. App. 3d 40, 125 Cal. Rptr. 504 (1975); *People v. Bagwell,* 38 Cal. App. 3d 127, 113 Cal. Rptr. 122 (1974).

In light of our holding, we need not address the admissibility of the items found after the mirror, straw and cocaine were seized; any error in admitting those items would be harmless.

Affirmed.

MUNSON, C.J., and MCINTURFF, J., concur.

Review denied by Supreme Court April 6, 1984.