**Janet SAYRE, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 3–184A26.**

Court of Appeals of Indiana,
Third District.

Dec. 5, 1984.

Rehearing Denied Jan. 3, 1985.

Susan K. Carpenter, Public Defender, C.H. Gardner, Deputy Public Defender, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

On November 17, 1982 Officers Kern and Slayton of the Elkhart Police Department went to the defendant's house to question her regarding a theft. Officer Kern stated at the suppression hearing that he felt he had probable cause to arrest her at that time for theft but had not expected to arrest her for drug violations. Two uniformed police officers were positioned at the back door while Kern and Slayton approached the front door. The defendant's house is on a corner lot. The officers parked near the intersection, i.e. at an angle from the front door which faced the street. Kern and Slayton walked from their car directly to the front door.[1] Kern stated that he walked onto the front porch and reached up to knock. Slayton had been walking behind him and stopped 6 to 15 feet from the front door and 5 feet from a front window which had its curtains open. The officers had arrived at approximately 6:40 p.m. and testified that it was dusk outside. Lights were on inside the kitchen making the people inside it clearly visible to Slayton. He stated he did not get close to the window which had a shrubbery box in front of it. Officer Kern knocked on the front door and stated police officers were present when questioned by a female inside. The female reacted by shouting "Police!" and ran away from the door. At the same time Slayton saw people at a kitchen table move rapidly away with what appeared to be drug paraphernalia. The officers proceeded inside and arrested the people present. While a search warrant was obtained by telephone the officers waited inside to secure the house. After the search warrant was issued, the house was searched and various materials, later determined to be controlled substances, were seized. The defendant was acquitted of possession of controlled substances and found guilty of maintaining a common nuisance, a Class D felony, after trial by jury. She was sentenced to four years in prison with all four years suspended and placed on probation for four years on the condition she serve 90 days in the Elkhart County Security Center. The defendant now appeals.

The issues are:

1) Did the trial court err in admitting evidence which was seized illegally as a result of a warrantless search?

2) Did the trial court err in admitting evidence which the state did not disclose until one day before trial?

3) Did the trial court err in admitting evidence which the defendant claims was irrelevant?

4) Did the trial court err in admitting a purse containing a syringe because no foundation had been laid to connect it to the defendant?

5) Was there sufficient evidence to support the jury's guilty verdict on Count II, maintaining a common nuisance, and is a guilty verdict on Count II inconsistent with her acquittal on Count I, possession of controlled substances?

6) Did the trial court err in allowing the state to amend the information three days before trial?

*Issue 1*

The defendant asserts that she had a reasonable expectation of privacy not to be observed from her front yard and that the officer's view through the window was an illegal warrantless search which could not provide the probable cause for her subsequent arrest and the search warrant obtained shortly after her arrest.

---

1. Slayton testified at trial that he initially started to go to the side door but saw the uniformed officers at the rear and consequently followed Kern to the front door area.

The state maintains that the warrantless search was justified under the plain view doctrine as enunciated by the United States Supreme Court in *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.

The defendant argues that Slayton was not justified in being in his place of observation, i.e. on the front yard and not on the front walk, thereby failing the first element under *Coolidge.* As stated in *May v. State* (1977), 173 Ind.App. 482, 364 N.E.2d 172, a warrantless search may be justified if the officer's view is made from a place where he had a legal right to be.

■ *Coolidge* and its progeny cover the situation where a government agent, *after* an intrusion into a constitutionally protected area, sees contraband in plain view and seizes it without a search warrant covering the contraband seized. The *Coolidge* requirements are applied to determine whether the items so seized were obtained within a valid exception to the fourth amendment's prohibition of unreasonable searches and seizures. 1 W. LaFave, *Search and Seizure*, Section 2.2 at 242 (1978) (*LaFave*). *See State v. Kaaheena* (1978), 59 Haw. 23, 28, 575 P.2d 462, 466. However, a close situation often confused with the plain view doctrine occurs when a police officer sees contraband from an area that is not constitutionally protected, i.e., *before* an intrusion, e.g. where a police officer sees something in an open field, *Hester v. United States* (1924), 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898, *Cornman v. State* (1973), 156 Ind.App. 112, 294 N.E.2d 812; on the body of a person, *United States v. Rizzo* (7th Cir.1978), 583 F.2d 907; within a building, *United States v. Morrow* (7th Cir.1976), 541 F.2d 1229, *Bruce v. State* (1978), 268 Ind. 180, 375 N.E.2d 1042; or within a motor vehicle, *Cobb v. State* (1980), Ind., 412 N.E.2d 728. In these situations, sometimes referred to as "open view," *Kaaheena, supra*, no "search" in the constitutional sense has occurred. 1 *LaFave* at 243. Because there is no search, *Coolidge* need not be followed.

■ The threshold question for us is whether the police officer intruded upon a constitutionally protected area, i.e. an area where the defendant had an expectation of privacy protected under the fourth amendment. As the United States Supreme Court stated in *Katz v. United States* (1967), 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576:

"[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.... But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."

The front window of the defendant's home was unobstructed by curtains which were open. It was dusk outside and Slayton observed people inside the illuminated kitchen. This situation is distinguishable from *Lorenzana v. Superior Court of Los Angeles* (1973), 9 Cal.3d 626, 108 Cal.Rptr. 585, 511 P.2d 33 cited by the defendant. There, the police officers peered through a small opening in the closed drapes to observe activity inside. We find the situation here more factually similar to *State v. Drumhiller* (1984), 36 Wash.App. 592, 675 P.2d 631. Police officers there went to a house to investigate a burglary report. The officers parked down the street from the house and walked to the front. While passing an unshaded front window, the officers saw people inside in an illuminated room. The officers came closer to the window by walking into a shrubbery box and then observed what appeared to be cocaine use. One police officer stayed at the window while others went to the front door. The officer at the window observed a person move what appeared to be drugs out of sight. The officer then went inside and seized the hidden drugs. The court noted the officers were legitimately on the property to investigate a burglary and found that the defendants did not display a legitimate expectation of privacy by leaving the drapes open and concluded the police officers' actions were reasonable under the circumstances.

It is clear that the defendants did not display a reasonable expectation of privacy by leaving open the curtains on the front window, which is only a few feet from the front door.

The defendant attempts to use language from *Coolidge* to argue that Slayton's actions constituted an unconstitutional search because he looked into the window while standing in the front yard. As we noted above, *Coolidge* does not apply where there has been no initial intrusion into a constitutionally protected area. The defendant's argument in essence then is that the police officer was trespassing or in a place he had no right to be and therefore his view into the window from that vantage point was impermissible.

The Seventh Circuit Court of Appeals has stated that in similar circumstances the question is not whether a trespass has occurred but whether the police officer's actions were reasonable under the circumstances. *United States v. Conner* (7th Cir. 1973), 478 F.2d 1320 (police officers may have stepped from a public alley onto private property to look through an open door). In *United States v. Hanahan* (7th Cir.1971), 442 F.2d 649, 654 the court found that if a police officer who looked through a garage door window had left the sidewalk and stepped onto the adjacent grass, it constituted "no more than a technical trespass on the part of the officer" which did not give rise to a fourth amendment violation. Similarly, the court in *United States v. Johnson* (D.C.Cir.1977), 561 F.2d 832 found that a police officer who went to a house investigating suspected drug activity and deviated a few steps from a walkway to look into a basement window was in a situation comparable to the technical trespass in *Conner, supra.*

The police officer's action was part of a reasonable investigation under the circumstances. Slayton testified that he walked behind Kern from the car to the front door. He stopped short of the front door and waited until Kern knocked on the door. While standing there in front of the window he observed the illegal activity inside. He did not approach closer to the window or peer into a small opening in drawn curtains. He observed the activity at the same moment Kern knocked and informed those inside of their presence. His actions were reasonable and not unlike those of a reasonably respectful person approaching the front door from a car parked at the corner. There was no substantial or unreasonable departure from the access route to the front door nor was a particularly intrusive method of viewing used.[2] Slayton's view was not an impermissible search but a lawful and reasonable part of his legitimate reason for being present.

■ While we find Slayton's view lawful, the analysis does not end here. The lawfulness of the view does not *ipso facto* determine whether the subsequent seizure was lawful. As the United States Supreme Court stated in *Coolidge,* 403 U.S. at 468, 91 S.Ct. at 2039:

> "[P]lain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle ... that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" (emphasis in original)

The view may be lawful, but without more it only provides probable cause for obtaining a search warrant.[3] *See State v. Hook* (1978), 60 Haw. 197, 587 P.2d 1224.

---

**2.** For examples of constitutionally permissible and impermissible police conduct *see State v. Seagull* (1981), 95 Wash.2d 898, 632 P.2d 44, 47 n. 2 and 48 n. 3.

**3.** *LaFave,* Section 2.2, 244 n. 2: "Compare *Taylor v. United States,* 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932) (though police, standing where they had a right to be, saw contraband in open view in a garage by looking through a small opening, their warrantless entry to seize the contraband was unconstitutional); with *Steele v. United States,* 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925) (police, standing where they had a right to be, looked into garage and saw contraband in open view through doorway; this furnished probable cause for obtaining warrant by which they lawfully entered and seized the contraband)."

■ The question then is whether exigent circumstances existed to justify the warrantless entry and subsequent seizure of evidence. Exceptions to the fourth amendment's requirement of a search warrant before lawful entry of a premises[4] may be made by government officials include:

1) risk of bodily harm or death, e.g. *United States v. Perez* (N.D.Ohio 1977), 440 F.Supp. 272 (fire at defendant's house, defendant exited with explosives, warrantless search for more explosives held proper to protect public);

2) to aid a person in need of assistance, *Harrison v. State* (1981), Ind.App., 424 N.E.2d 1065 (puddle of blood at scene and fresh trail of blood followed to house where police entered after receiving no response to knocks and calls);

3) to protect private property, e.g. where police reasonably believe premises burglarized as in *B.P.O.E. #576 Elks Club v. State* (1980), Ind.App., 413 N.E.2d 660. *See also LaFave* Section 6.6(b) at 473; and

4) actual or imminent destruction or removal of evidence before a search warrant may be obtained. *Johnson v. United States* (1948), 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436.

*See LaFave*, Section 6.5 at 432. Finally, the government has the burden of showing a warrantless entry fits within an exception. *United States v. Jeffers* (1951), 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59.

In *United States v. Rubin* (3d Cir.1973), 474 F.2d 262 the court analyzed United States Supreme Court decisions[5] to ascertain whether the destruction of evidence exception to the fourth amendment's requirement of a search warrant prior to entering a premises required actual knowl-

edge by the police officer that destruction of evidence is taking place. The court found knowledge of actual destruction was not required. The court then established the test for determining whether warrantless searches are justified under the imminent or actual destruction of evidence exception to the fourth amendment.

■ If government agents have probable cause[6] to believe illegal materials are present in the premises and, based on surrounding circumstances, they reasonably conclude evidence will be destroyed or removed, then a warrantless search is justified. Circumstances which courts have considered relevant include:

"(1) the degree of urgency involved and the amount of time necessary to obtain a warrant, (2) reasonable belief that the contraband is about to be removed, (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought, (4) information indicating the possessors of the contraband are aware that the police are on their trail, and (5) the ready destructibility of the contraband and the knowledge 'that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic,' *United States v. Manning* (2d Cir.1971), 448 F.2d 992, 998–99; *United States v. Davis* (3d Cir.1972), 461 F.2d [1026] at 1031–32."

*Rubin, supra*, 474 F.2d at 268 (additional citations omitted). The *Rubin* court found that the government agents had probable cause to believe hashish was in the defendant's house. When the defendant was arrested a few blocks from his house he told people to call his brother. The court found the police officers' belief that this constituted a signal to destroy evidence was reason-

---

**4.** We do not consider here exceptions to the search warrant requirement for vehicles. *See generally LaFave*, Section 7.1 to 7.5.

**5.** For analysis of *Rubin* and authority therein *see* Comment, 70 J.Crim.L. & Crim. 255 (1979).

**6.** "Strong" probable cause may be required to justify a warrantless search under the imminent or actual destruction of evidence exception. *United States v. Johnson* (D.C.Cir.1977), 561 F.2d 832 (police officer saw narcotics in the open through unobstructed window).

able and therefore justified their subsequent warrantless entry as reasonable under the circumstances.

█ When Kerr knocked on the front door and stated that police were present he heard a female yell "Police!" and rapidly receding footsteps. Through the window Slayton simultaneously observed a woman move rapidly away from the door and the people at the kitchen table move rapidly out of view carrying what appeared to be drug paraphernalia. A reasonable conclusion from this activity is that actual or imminent destruction of evidence is taking place. *See, e.g., People v. Blake* (1981), 93 Ill.App.3d 538, 417 N.E.2d 682. There is no evidence that the officers observed the drug activity before the people became aware of their presence so that a search warrant could have been obtained, *Ludlow v. State* (1974), 262 Ind. 266, 314 N.E.2d 750 or that the officers created the emergency in order to justify the entry and search. *United States v. Rosselli* (7th Cir. 1974), 506 F.2d 627. The officers entered the house, arrested the people present, and secured the house while they obtained a search warrant. Upon issuance of the search warrant they searched the rest of the house and seized additional evidence.

The officers had obtained probable cause from Slayton's lawful view through the front window. *Johnson*, 561 F.2d 832. Circumstances, including the urgency requiring prompt action with no time to obtain a search warrant, the reasonable belief that evidence was being removed or destroyed, the knowledge that people inside had been alerted to the police officers' presence, and the easy destructibility of controlled substances combine to make the police officers' warrantless entry justified.

Finally, their entry was justified for the limited purpose of securing the residence while a warrant was obtained. *United States v. Cuaron* (10th Cir.1983), 700 F.2d 582. The trial court did not err in admitting evidence seized under the search warrant.

*Issue 2*

█ The defendant argues that the trial court abused its discretion in admitting evidence over her objection on grounds of surprise because the state did not add three exhibits to its list of evidence until July 27, 1983, the day before trial. She asserts this was in violation of the trial court's discovery order to provide a list of evidence by January 19, 1983. The defendant admits the proper remedy was a continuance, *Osborne v. State* (1981), Ind., 426 N.E.2d 20 which she did not seek. However, she maintains that the state's failure to submit the exhibits for testing at the Indiana State Police Laboratory until July 20, 1983 is evidence of bad faith that requires exclusion of the evidence. *Sparks v. State* (1979), 271 Ind. 419, 393 N.E.2d 151. Further, the defendant asserts that the trial court's failure to exclude the evidence denied her right to a fair trial as guaranteed by the sixth and fourteenth amendments to the United States Constitution.

The defendant objected to the admission of three exhibits on the basis of surprise, which may be cured by a continuance which the defendant failed to seek. *Osborne, supra.* The trial court has discretion to order sanctions for failure to comply with a discovery order. *Johnson v. State* (1983), Ind., 446 N.E.2d 1307. However, the defendant made no mention at trial of the state's bad faith in producing the evidence the day before trial. The record reveals that the state notified defendant's counsel the day it received the results of chemical analysis upon these exhibits. Further, the record shows that Detective Ivory of the Elkhart Police Department transported the exhibits to the state police lab on July 20, 1983 and received the exhibits and analysis report on July 27, 1983. The defendant made no attempt on cross examination of Ivory to determine the reason for the delay in bringing these exhibits to the police lab for chemical analysis. No evidence of bad faith by the state has been shown. The defendant failed to seek the proper remedy of a continuance and therefore has failed to show an abuse of discre-

tion by the trial court in admitting the exhibits.

*Issue 3*

The defendant maintains that the trial court abused its discretion in admitting items of drug paraphernalia [7] none of which contained controlled substances under a count charging the defendant with a violation of IC 35–48–4–13(b) by maintaining a common nuisance, i.e. a place for unlawfully keeping controlled substances. Because these items did not contain controlled substances, the defendant argues that they are not probative to the issue of whether she either possessed controlled substances or maintained a common nuisance by keeping controlled substances. We agree.

Any evidence tending to connect the accused with commission of the crime charged is admissible. *Johnson v. State* (1980), Ind., 400 N.E.2d 132. Evidence is relevant if it tends to prove or disprove a material fact or sheds light on the guilt or innocence of the accused. *Larkin v. State* (1979), 271 Ind. 469, 393 N.E.2d 180.

The legislature clearly indicated its intent under IC 35–48–4–13 to proscribe the maintenance of a building which is used 1) by people unlawfully using controlled substances *or* 2) to unlawfully keep or sell controlled substances. The defendant was charged with violating IC 35–48–4–13(b), i.e. with maintaining a common nuisance by keeping controlled substances in her residence. The possession of paraphernalia which is associated solely with the use of controlled substances is not probative on the issue of whether the defendant kept controlled substances in the building.

The defendant is entitled to reversal for error, however, only if she shows that she was prejudiced by the error. *Pettit v. State* (1979), 272 Ind. 143, 396 N.E.2d 126. The defendant claims admission of the evidence had a tendency to confuse or mislead the jury. Evidence that drugs

were present in the house was properly admitted and a violation of IC 35–48–4–13(b) was properly shown. The defendant does not show how the admission of irrelevant evidence prejudiced her and without that showing we will not reverse the trial court's judgment. *Citizens National Bank of Whitley County v. Stasell* (1980), Ind.App., 408 N.E.2d 587.

*Issue 4*

The defendant asserts that the trial court erred in admitting into evidence a purse containing a syringe because no foundation was laid to connect it to the defendant. The state counters that the defendant is not charged with possessing the syringe but with maintaining a building which is used for unlawfully keeping controlled substances. Therefore, any error in admitting it is harmless since other evidence of drugs kept in the house was shown. We agree. In addition we do not believe the evidence here had a prejudicial impact on the jury as in *Cox v. State* (1981), Ind.App., 422 N.E.2d 357. There, the state's witness was allowed to testify regarding threats he received from unknown persons not to testify against the defendant. The court held that the effect on the jury was prejudicial to Cox, whose credibility was diminished concurrently with the bolstering of the state's witness thereby contributing to the verdict rendered against Cox. Unlike Cox, the defendant's conviction was not dependent on the credibility of witnesses, one of whom was allowed to testify about prejudicial matters. The admission of the syringe which contained no controlled substances was irrelevant to the charge for which she was convicted and had no prejudicial impact that contributed to the verdict rendered.

*Issue 5*

The defendant argues that her conviction of maintaining a common nuisance,

---

**7.** The exhibits numbered 11, 15, 22 and 23 consisted of 3 spoons, tie-offs, a blood-stained tissue, 8 syringes and a prescription bottle.

i.e. a place for unlawfully keeping mazindol, pentazocide and marijuana, is inconsistent with her acquittal on charges of possession of mazindol and marijuana. Her argument is apparently grounded on the assumption that possession is an element of maintaining a common nuisance under IC 35–48–4–13(b). However, the elements of maintaining a common nuisance under section 13(b) are: 1) knowingly or intentionally 2) maintaining a building, structure, vehicle ,or other place 3) used for unlawfully keeping or selling controlled substances. It is consistent that a person who does not possess controlled substances may concurrently maintain a building that is used for unlawfully keeping controlled substances.

■ The defendant also argues that she cannot be held criminally liable for controlled substances kept by her tenants because she had no knowledge of or intent to keep these substances. Her authority, *Edwards v. State* (1979), 179 Ind.App. 363, 385 N.E.2d 496 considers the mens rea required for possession of controlled substances by one not in exclusive possession of an apartment. That case is distinguishable from the situation here where the defendant has been convicted of maintaining a common nuisance. Another person in the building maintained by the defendant may be guilty of the actual possession of controlled substances. The question is whether the defendant maintained the building with the knowledge or intent that it was being used for unlawfully keeping controlled substances.

■ Essentially the defendant is asking us to reweigh the evidence and judge the credibility of witnesses regarding her knowledge or intent. This we will not do. *Taylor v. State* (1983), Ind.App., 445 N.E.2d 1025. We will view the evidence most favorable to the state and all reasonable inferences therefrom. If there is substantial evidence of probative value from which the trier of fact could conclude guilt beyond a reasonable doubt we must affirm the conviction. *Morgan v. State* (1983), Ind.App., 445 N.E.2d 585. There is substantial evidence of probative value from which the jury could conclude the defendant was guilty beyond a reasonable doubt and we affirm the trial court's judgment.

*Issue 6*

■ On March 10, 1983 the state filed a motion to amend the information *inter alia* to change Count II from maintaining a common nuisance by keeping cocaine (schedule II) to keeping mazindol (schedule III), pentazocine (schedule IV) and marijuana (schedule 1). Hearing was held July 25, 1983 on the motion to amend which was granted over objection as to Count II. This occurred three days before trial and was unaccompanied by a motion for a continuance by the defendant.

The defendant argues at the hearing that the amendment prejudiced her rights because possible defenses could change depending on whether cocaine or other drugs were involved. In addition, in the motion to correct errors the defendant asserted that the change was one of substance and not form and therefore should have been controlled by IC 35–34–1–5(b) and that she was not allowed sufficient time to prepare a defense.

As the trial court noted from the defendant's objection at the hearing, her defense to the charge of maintaining a common nuisance by keeping controlled substances was her denial that she knew what controlled substances people were bringing into her house. Consequently this defense is not rendered inapplicable by the change and the defendant fails to show how she was harmed by it. In addition, we note that she received notice of the change when the motion was filed March 10, 1983. We fail to perceive how she lacked time to prepare a defense, especially in light of her failure to seek a continuance. *Hudson v. State* (1984), Ind.App., 462 N.E.2d 1077.

■ Finally, the crime with which she is charged is knowingly or intentionally maintaining a building that is used for unlawfully keeping controlled substances. A "controlled substance" is defined in IC 35–48–1–1 as "a drug, substance, or immediate

precursor listed in schedule I, II, III, IV or V of IC 35–48–2. A change in the information which alleges the defendant kept a controlled substance that is listed in a different schedule than that originally alleged is a change in form only. The offense alleged is the same as before, i.e. maintaining a place used to unlawfully keep controlled substances. The trial court did not err in allowing the amendment to Count II of the information. *Hudson, supra.*

The trial court's judgment is affirmed.

Affirmed.

STATON, P.J., concurs in result.

HOFFMAN, J., concurs.