Betty RICHARD, Dale Richard, Mike Richard, Gary Richard, Mike W. Skaggs, Appellants (Defendants Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 1–1284A311.

Court of Appeals of Indiana, First District.

Aug. 28, 1985.

Michael J. McDaniel, New Albany, for appellants.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

The several defendant-appellants are appealing from their conviction by a jury of diverse offenses. Betty Richard and Mike Skaggs were found guilty of the Class C misdemeanor of unlawfully possessing a deer (IND. CODE 14-2-3-3). Dale Richard was also found guilty of unlawfully possessing a deer as well as the Class C misdemeanor of hunting without the landowner's consent (IND. CODE 14-2-6-1) and the Class B misdemeanor of hunting and taking a deer out of season (IND. CODE 14-2-3-3). Gary Richard was convicted of hunting without the landowner's consent and the Class D felony of possessing more than 30 grams of marijuana (IND. CODE 35-48-4-11). The convictions for hunting without the landowner's permission are not being contested in this appeal.

We reverse.

The facts surrounding the case are that Conservation Officer Little was called to the scene of a hunting related shooting accident by the Harrison County Sheriff's Department. After arriving on the scene, Little determined from conversation with others that Gary Richard had been shot and hit by a deer slug purportedly while fox hunting and while in the company of Mike Skaggs. Little was "highly" suspicious of game related violations. Officer Little also determined that the gun fired at Richard had been hidden. Little then went to Mike Skaggs' mobile home to look for evidence of illegal deer or game violations.

While at the Skaggs' property, Little found the rib cage of a deer in the well house and the head of a seven-point deer in a freezer. The freezer was located on the back porch outside of the mobile home.

Little then went to the property owned by Betty Richard. Dale Richard admitted that he had accidently shot Gary and that the gun was recovered by the police. The gun used by Dale was loaded with deer slugs and double ought buck shot. Little noticed a red substance on the tailgate of a pickup truck registered to Betty Richard. In response to Little's inquiry about the substance, he was informed that it was barbecue sauce. Little went to a trash barrel where he had previously seen barbecue sauce. In the bottom of the barrel, Little found a plastic trash bag which was covered with hair and the sauce. The bag contained parts of a deer wrapped in old bedding. Continuing his search for deer remains, Little lifted the cover of a boat and found marijuana, subsequently determined to be in the amount of approximately 945 grams. Gary Richard was identified on the boat's registration papers as the transferee, hence, owner of the boat. Conservation Officer Hensley, called to assist in the investigation, made tests on the rib cage and found lead residue of the type associated with deer slugs. He also determined that hair found on the pickup truck was from a deer.

Subsequent to being charged and prior to trial, the defendants filed a motion to suppress the evidence obtained during the warrantless and nonconsensual search of the Skaggs and Richard property. After a hearing on the motion, the trial judge overruled it and made a finding of probable cause.

Because we reverse, we shall collectively discuss only two issues concerning the admission of evidence seized as a result of a warrantless search. Underlying the argument is IND. CODE 14–2–9–1 which reads:

> The director, game wardens [conservation officers], and deputy game wardens [conservation officers] shall have the power and authority to search any boat, conveyance, vehicle, automobile, fish-box, fish-basket, game bag, game coat, or any receptacle in which game may be carried, and may enter into or upon any private or public property for such purposes or for the purpose of patrolling or investigating *when he has good reason to believe* that he will secure evidence of a violation of any of the laws for the propagation or protection of fish, frogs, mussels, game, fur-bearing animals, or birds, now in force or hereafter enacted, or any of the provisions of this act [14–2–9–1— 14–2–9–4]. Public or private property shall not include dwellings or dwelling houses. (Emphasis added).

The defendants argue that the statute is not consitutional for the reason that it substitutes a lower standard than probable cause or, in the alternative, that the search was conducted without probable cause and that there was an absence of exigent circumstances. The State argues that the constitutional question has been waived and that probable cause did exist.

The State's argument that there has been a waiver of the constitutional question is without merit. The statutes the State relies upon, I.C. 35–3.1–1–4 and I.C. 35–3.1–1–6, relate to the constitutionality of the statute defining the offense charged. The defendants do not challenge the constitutionality of the underlying criminal offenses, instead they raise the question, and preserved it throughout the trial, of the use of evidence procurred by means of a warrantless search.

On the other hand, it is law of long standing that if a cause can be decided without passing on the constitutional question we will do so. *Hoover v. Wood*, (1857) 9 Ind. 286, *Consolidated City of Indianapolis v. Cutshaw*, (1983) Ind.App., 443 N.E.2d 853. Under the facts at hand, we previously noted that in ruling on the motion to suppress, the trial judge found probable cause existed for the search. Additionally, during the trial when the complained of exhibits were offered and objected to, the trial judge reiterated that probable cause standard was utilized and not "a

good reason to believe" standard. As a result, the appropriate standard was used by the trial judge, with the question remaining of whether the facts sustain a warrantless search.

■■■ Prior to further discussion of the merits, we believe it proper to observe that a conservation officer is a law enforcement officer. I.C. 14–3–4–9(b) states:

> The conservation officers have the power to enforce *all laws* of Indiana and without writ or warrant to arrest for violation thereof when committed in their presence. (Emphasis added).

We are of the opinion that no serious question can be raised that conservation officers are exempted from the constitutional guarantees relating to unreasonable search and seizure. *See:* U.S. Const. amend. 4, Ind. Const. Art. 1, § 11, *Jones v. State*, (1984) Ind.App., 467 N.E.2d 1236.

■■■ Turning to an examination of the legal sufficiency of the warrantless search, the initial premise is that a judicially issued search warrant is a condition precedent to a valid search and seizure except under a few, narrowly drawn exceptions, where the exigencies of the situation mandate an immediate response. *Ludlow v. State*, (1974) 262 Ind. 266, 314 N.E.2d 750, *Rihl v. State*, (1980) Ind.App., 413 N.E.2d 1046. The State bears the burden of proving that a warrantless search falls into one of these exceptions. *Ludlow* and *Rihl, supra*, *Short v. State*, (1982) Ind. 443 N.E.2d 298. We note that exigent circumstances justify dispensing with a warrant but they do not eliminate the need for probable cause. *Cochran v. State*, (1981) Ind.App., 429 N.E.2d 672. Probable cause must be established before the search and not as the results of the search. *Snyder v. State*, (1984) Ind.App., 460 N.E.2d 522.

A review of the evidence given at the hearing on the motion to suppress reveals the following things: That Officer Little had received telephone complaints prior to the shooting that some of the defendants had been hunting deer out of season, however, the identity of the complainants was either not known or had been forgotten by Officer Little. The source of information, as it relates to what caused the shooting and that others at the scene quickly left taking their guns with them, was either unknown or not identified. Officer Little relied specifically upon I.C. 14–2–9–1 in entering upon Skaggs' and then Richard's property and making the search. Officer Little had no knowledge of any game being taken by the defendants. In response to a question asking why he had reason to believe that there had been violations of fish and wildlife laws, Officer Little replied:

> Because they were some of the subjects involved in the hunting activity where the accident happened and they were all the ones that had left real quick.

Summarizing, Officer Little conducted the searches for the reason the victim had been shot with a deer slug at a time when deer should not be hunted with such a weapon, because he had previous complaints about some of the defendants hunting deer out of season, and because some of the defendants left the shooting scene in a hurry and hid the weapons involved. Both on direct and cross-examination the only testimony pertaining to exigent circumstances was the mention, without further explanation or comment, that some of the defendants hurriedly left the scene of the shooting in a motor vehicle and hid their weapons.[1]

■■■ The recent case of *Sayre v. State*, (1984) Ind.App., 471 N.E.2d 708 summarized the exigent circumstances exception necessary for a warrantless search. Judge Garrard wrote:

> The question then is whether exigent circumstances existed to justify the warrantless entry and subsequent seizure of

1. It is noted with some interest that a portion of the cross-examination of Officer Little by the State dealt with the relationship of the Conservation Officer and other police agencies in the area. The inference arises from the questions and answers that the other agencies were aware that Conservation Officers could search where, for whatever reasons. Other officers could not and that his services in this regard were sometimes used. It was denied that such was the situation in this case.

evidence. Exceptions to the fourth amendment's requirement of a search warrant before lawful entry of a premises may be made by government officials include:

1) risk of bodily harm or death, e.g. *United States v. Perez* (N.D.Ohio 1977), 440 F.Supp. 272 (fire at defendant's house, defendant exited with explosives, warrantless search for more explosives held proper to protect public);

2) to aid a person in need of assistance, *Harrison v. State,* (1981), Ind.App., 424 N.E.2d 1065 (puddle of blood at scene and fresh trail of blood followed to house where police entered after receiving no response to knocks and calls);

3) to protect private property, e.g. where police reasonably believe premises burglarized as in *B.P.O.E. # 576 Elks Club v. State* (1980), Ind.App., 413 N.E.2d 660. *See also LaFave* Section 6.6(b) at 473; and

4) actual or imminent destruction or removal of evidence before a search warrant may be obtained. *Johnson v. United States* (1948), 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436.

*See LaFave*, Section 6.5 at 432. Finally, the government has the burden of showing a warrantless entry fits within an exception. *United States v. Jeffers* (1951), 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59.

471 N.E.2d at 714.

The opinion continues:

If government agents have probable cause to believe illegal materials are present in the premises and, based on surrounding circumstances, they reasonably conclude evidence will be destroyed or removed, then a warrantless search is justified. Circumstances which courts have considered relevant include:

"(1) the degree of urgency involved and the amount of time necessary to obtain a warrant, (2) reasonable belief that the contraband is about to be removed, (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought, (4) information indicating the possessors of the contraband are aware that the police are on their trail, and (5) the ready destructibility of the contraband and the knowledge 'that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic', *United States v. Manning* (2d Cir.1971), 448 F.2d 992, 998–99; *United States v. Davis* (3d Cir.1972), 461 F.2d [1026] at 1031–32." (Footnote omitted).

 We are compelled to conclude that the State failed in its burden of proving that the warrantless search fell into one of the well-delineated exceptions heretofore mentioned. *Zimmerman v. State,* (1984) Ind.App., 469 N.E.2d 11. The hearing on the motion to suppress produced no evidence that a warrantless search was necessary to protect property, provide assistance, or prevent bodily harm or death. The only evidence pertaining to the destruction of evidence was that other persons left in a motor vehicle and had hidden weapons, however, this statement standing alone fails to support any sufficient inference that there was about to be any actual or imminent destruction or removal of evidence and that a warrantless search was necessary.

*Johnson v. State,* (1975) 163 Ind.App. 684, 325 N.E.2d 859, states the general proposition that if an automobile is involved exigent circumstances are implied from the possibility of easy removal of evidence from the jurisdiction. *Johnson* is factually distinguishable from the case on appeal and as previously indicated, there was no concern or direct mention here about removal and/or destruction of evidence by the State. *See also: Cochran v. State,* (1981) Ind.App., 429 N.E.2d 672.

An examination of the trial court's ruling that probable cause existed also needs to be examined.

Under the Fourth Amendment a determination of probable cause is required to be made by a judge before a search warrant

can be issued. If issued upon sworn oral testimony, there must be a substantial basis therein for the judge to find that probable cause exists to believe the proposed search will result in the discovery of evidence of an offense. *McClain v. State,* (1980) [274] Ind. [250], 410 N.E.2d 1297. The evidence placed before the judge must reflect either facts within the personal knowledge of the affiant (the officers presenting oral testimony in this case) or upon credible tips from a reliable informer to establish probable cause. *Pirtle v. State,* (1975) 263 Ind. 16, 323 N.E.2d 634. *See also,* I.C. 35-1-6-2 [Burns 1979 Repl.]. Attestations upon which probable cause is premised must be attestations of fact and not mere conclusions of the affiant or witness. *Aguilar v. Texas,* (1964) 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; *Kinnaird v. State,* (1968) 251 Ind. 506, 242 N.E.2d 500. *Short v. State,* (1982) Ind., 443 N.E.2d 298.

■ A review of the testimony given at the motion to suppress clearly shows that much, if not most, of the information used by Officer Little in making a determination to search the Skaggs and Richard property came from sources which were not identified. The credibility and reliability of the informants was not determined or established. The only fact which we can find in the record which was within the personal knowledge of Officer Little was that Gary Richard had been shot by a deer slug. While information existed which may have supported additional inferences, we are of the opinion that those inferences are not sufficient to establish probable cause. It has long been recognized that a warrantless search is not justified by suspicions. *Hart v. State,* (1924) 195 Ind. 384, 145 N.E. 492.

■ Although we have not addressed the question of the "good reason to believe" standard specified in IND. CODE 14-2-9-1, we believe that standard to be suspect. Conservation officers who, in their role as a government agent, rely upon that standard as something less than probable cause as defined in a 4th Amendment context, face a high probability of putting their investigation in harm's way.

Judgment reversed.

NEAL, J., concurs.

RATLIFF, P.J., concurs with separate opinion.

RATLIFF, Presiding Judge, concurring.

I concur in the majority opinion but would go further and declare Indiana Code section 14-2-9-1 unconstitutional insofar as it purports to confer upon conservation officers the authority to enter upon private property without a warrant simply upon having good reason to believe they will secure evidence of a violation of certain game laws. Conservation officers are subject to the same constitutional restrictions as other law enforcement officers. The legislature may not extend authority which transcends constitutional limitations.

Both the Fourth Amendment to the Constitution of the United States and Article 1, Section 11 of the Constitution of Indiana protect people from unreasonable searches and seizures, and provide that no warrants shall issue but upon probable cause supported by oath or affirmation and particularly describing the place to be searched and the thing to be seized. I cannot equate good reason to believe with probable cause and believe that Ind.Code § 14-2-9-1 approves a lesser standard than that mandated by both the federal and state constitutions. Further, the showing of probable cause merely authorizes the issuance of a warrant, it does not dispense with the warrant requirement. If the officers named in the statute are entitled to enter upon private property without a warrant, that entry must be justified by both the existence of probable cause and some exigent circumstance which is within the recognized exigent circumstance exception to the warrant requirement. Those exceptions are clearly delineated in Judge Garrard's opinion in *Sayre v. State* (1984), Ind.App., 471 N.E.2d 708, 714 as quoted in the majority opinion. Because Ind.Code § 14-2-9-1 purports to grant powers to the officers therein named

which exceed the constitutional limitations upon the exercise of such powers, it violates both the state and federal constitutions.